ALEX ROSENBERG AND BERTHA ROSENBERG, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12777-88. Filed March 7, 1991.

*Jay H. Grant,* for the petitioners.
*Marilyn Devin* and *Marlene A. Kristovich,* for the respondent.

## OPINION

FEATHERSTON, *Judge:* Respondent determined a deficiency in petitioners' Federal income tax for 1984 in the amount of $151,238. The issue for decision is whether a net operating loss carryover generated by a subchapter C corporation[1] in earlier years may offset income in a later year, at which time a subchapter S election is in effect for the same corporation.

---

[1] The references to subchapters herein are to subchapters of ch. 1 of the Internal Revenue Code of 1954. Unless otherwise indicated, section references are also to the Internal Revenue Code of 1954.

All the facts are stipulated.

Petitioners, husband and wife, were legal residents of the State of California when their petition was filed. They filed a joint income tax return and an amended joint income tax return for 1984, both with the Internal Revenue Service Center at Fresno, California.

Prince David, Inc. (hereinafter, the corporation), was incorporated in April 1979 and engaged in real estate development. The only business that the corporation conducted before the end of 1984 was the construction of a 15-unit condominium building, the sale of one of the units in 1981, the rental of some of the units, and the sale of all except one of the remaining units in 1984.

The corporation reported its income as a subchapter C corporation, with a fiscal year ending November 30, until an election of subchapter S status became effective on December 1, 1982. Thereafter, at least through 1984, the corporation reported its income on a calendar year basis as an S corporation. At the time of the election, petitioners owned a total of 50 percent of the stock. During 1984, petitioners were the sole shareholders of the corporation.

As of November 30, 1982, the corporation had a net operating loss carryover of $353,773, accumulated over 4 taxable years:

| FYE | Amount |
| --- | --- |
| Nov. 30, 1979 | $6,738 |
| Nov. 30, 1980 | 66,938 |
| Nov. 30, 1981 | 110,696 |
| Nov. 30, 1982 | 169,401 |

The parties stipulated that "construction carrying charges" amounted to $303,513 of the total $353,773 carryover. Under subchapter S, the corporation had a loss of $5,645 for the remainder of 1982, a loss of $46,974 in 1983, and reported income of $46,268 in 1984.

In May 1981 the corporation sold one condominium unit. It rented other units until 1984, when it sold 13 units and distributed $340,619[2] to petitioners.

---

[2]The stipulation of facts uses the figure $358,526, but the parties have agreed on brief that $340,619 is the correct figure.

On its 1984 U.S. Income Tax Return for an S Corporation (Form 1120S), the corporation excluded $303,513 from gross sales, as follows:

Gross sales:

| | |
|---|---:|
| Rental ...................................... | $22,782 |
| Sale of condominiums ......................... | 1,268,923 |
| Subtotal...................................... | 1,291,705 |
| Excluded from income per Statement 2.......... | 303,513 |
| | 988,192 |

## Statement 2 attached to the return explains:

Costs of $303,513 for interest, taxes and certain other costs for construction and carrying the condominium units sold in 1984 that were incurred and deducted in periods ending prior to December 1, 1982, but provided no tax benefit to the Corporation, have been excluded from the sales revenues under the tax benefit rule of Internal Revenue Code [section] 111.

Petitioners have stated their position in their brief succinctly as follows:

The corporation incurred the $303,513 of expenses in excess of income as construction carry costs to carry a 15 unit condominium project it constructed until the condominium units could be sold for the amounts owed by the Corporation. These expenses were incurred when the Corporation reported under Subchapter C from its formation in 1979 to November 30, 1982. The Corporation made an S election effective December 1, 1982. The condominium units were sold in 1984, when the S election was in effect.

Petitioners contend that $303,513 of the sale proceeds should be excluded from the corporation's income under the Tax Benefit Rule.

Respondent contends that the statutory scheme for the taxation of the income of subchapter S corporations forbids the exclusion petitioners seek and that the tax benefit rule does not apply to the facts here presented.

We hold for respondent. Although petitioners cast their argument in terms of an exclusion from income, they are in fact seeking to carry forward to the S corporation's 1984 year a deduction of the net operating losses, to the extent of $303,513, incurred while the corporation was in subchapter C status. Section 1371, which includes section 1371(b)(1) specifically forbidding such deduction, states:

SEC. 1371(a). APPLICATION OF SUBCHAPTER C RULES.—

(1) IN GENERAL.—Except as otherwise provided in this title, and except to the extent inconsistent with this subchapter [S], subchapter C shall apply to an S corporation and its shareholders.

\*    \*    \*    \*    \*    \*    \*

(b) NO CARRYOVER BETWEEN C YEAR AND S YEAR.—

(1) FROM C YEAR TO S YEAR.—No carryforward, and no carryback, arising for a taxable year for which a corporation is a C corporation may be carried to a taxable year for which such corporation is an S corporation.

(2) NO CARRYOVER FROM S YEAR.—No carryforward, and no carryback, shall arise at the corporate level for a taxable year for which a corporation is an S corporation.

(3) TREATMENT OF S YEAR AS ELAPSED YEAR.—Nothing in paragraphs (1) and (2) shall prevent treating a taxable year for which a corporation is an S corporation as a taxable year for purposes of determining the number of taxable years to which an item may be carried back or carried forward.

The language of section 1371(b)(1) could hardly be more clear. It expressly forbids the carryforward of a net operating loss incurred by a subchapter C corporation to a later year for which the corporation is in subchapter S status. The language makes no exception supporting petitioners' attempt to recharacterize the C corporation net operating loss carryforwards as an exclusion from income. As implied by section 1371(b)(3), the carryover is not necessarily lost as a result of the subchapter S election; rather, it is suspended and may be used by the corporation if it reverts to subchapter C status within the 15-year statutory period prescribed by section 172(b)(1)(B). Leaving no doubt as to the meaning of section 1371(b)(1), the House and Senate committee reports corresponding to the enactment of the provision flatly declare that "Carryovers from years in which the corporation was not a subchapter S corporation will not be allowed to the corporation while in subchapter S status." H. Rept. 97-826 (1982), 1982-2 C.B. 730, 737; S. Rept. 97-640 (1982), 1982-2 C.B. 718, 725.

Petitioners, however, invoke the longstanding equitable doctrine known as the tax benefit rule. Under that rule, partially codified in section 111, a taxpayer may exclude from income a "recovery during the taxable year of any amount deducted in any prior taxable year to the extent such amount did not reduce the amount of tax imposed by

this chapter," i.e., under the income tax provisions. This is known as the exclusionary aspect of the tax benefit rule. The corollary, emphasizing the inclusionary aspect, is that when an item previously deducted by the taxpayer is restored, it must be included in income to the extent that the earlier loss (deduction) generated a tax benefit. See generally *Rojas v. Commissioner,* 90 T.C. 1090, 1097 (1988), affd. 901 F.2d 810 (9th Cir. 1990). Notwithstanding section 1371(b)(1), petitioners claim the right to invoke the tax benefit rule under the exception set forth in section 1371(a)(1), quoted above. Petitioners appear to argue that, because section 1371(a)(1) incorporates subchapter C principles and the tax benefit rule is available to subchapter C corporations, the exclusionary component of the tax benefit rule is available to the S corporation here.

The tax benefit rule is not available to petitioners. They are in fact seeking to deduct losses incurred by the corporation when it was a C corporation. As we have discussed, section 1371(b)(1) expressly forbids the deduction. Subchapter S, in general terms, relieves electing corporations of income tax at the corporate level and requires the shareholders of electing corporations to report their pro rata shares of income, deductions, losses, and credits. The opportunities for the abuse of such an election are apparent.

Section 1371(b)(1) forbidding the carryforward to an S corporation of the net operating loss of a C corporation is only one of several provisions designed to prevent abuses of the S corporation election. Others include termination of the S election in stated circumstances, sec. 1362(d); restrictions on an S reelection within 5 years of a termination, sec. 1362(g); and a limitation on the amount of a shareholder's deductible losses to the adjusted basis of the shareholder's stock plus the adjusted basis of the corporation's indebtedness to the shareholder, sec. 1366(d). There is no indication that these and other carefully crafted statutory provisions addressed to specific potential abuses were intended to be qualified by the tax benefit rule.

Even so, petitioners' corporation does not qualify for a coveted exclusion under the tax benefit rule for other reasons. First, petitioners have not shown that the taxes and interest portion of the net operating losses incurred

when the corporation was a C corporation did not produce a tax benefit. The net operating loss carryovers would have been available as deductions in future years if petitioners had decided to rent the condominium units indefinitely through the C corporation. Moreover, the carryovers, suspended while the corporation is in subchapter S status, will presumably be available when and if the corporation builds and either sells or rents other property during the 15-year carryover period prescribed by section 172(b)(1)(B).

Recognizing that net ˋoperating loss carryovers have valuable attributes, section 111(c) provides the following principle which is to be observed in the application of the tax benefit rule:

SEC. 111(c). TREATMENT OF CARRYOVERS.—For purposes of this section, an increase in a carryover which has not expired before the beginning of the taxable year in which the recovery or adjustment takes place shall be treated as reducing tax imposed by this chapter.

In other words, a net operating loss addition is to be treated as a tax benefit. Because the corporation here received such a benefit from each increase in its net operating losses for its fiscal years ending in 1979 through 1982, the foundation for the application of the tax benefit rule does not exist.

Second, the sale of the condominium units in 1984 did not effectuate, within the meaning of section 111(a), a recovery of the interest and taxes paid by the corporation when it was in subchapter C status. See *Rojas v. Commissioner,* 90 T.C. 1090 (1988), affd. 901 F.2d 810 (9th Cir. 1990); *Capitol Coal Corp. v. Commissioner,* 26 T.C. 1183, 1196-1197 (1956), affd. 250 F.2d 361 (2d Cir. 1957). In *Hillsboro National Bank v. Commissioner* and *United States v. Bliss Dairy, Inc.,* 460 U.S. 370, 383 (1983), the Supreme Court explained the controlling principle:

The basic purpose of the tax benefit rule is to achieve rough transactional parity in tax * * * and to protect the Government and the taxpayer from the adverse effects of reporting a transaction on the basis of assumptions that an event in a subsequent year proves to have been erroneous. Such an event, unforeseen at the time of an earlier deduction, may in many cases require the application of the tax benefit rule. * * * the tax benefit rule will "cancel out" an earlier deduction only when a careful examination shows that the later event is indeed fundamentally

inconsistent with the premise on which the deduction was initially based. * * * [Fn. refs. omitted.]

Petitioners seek to distance themselves from this "fundamentally inconsistent" standard, formulated by the Supreme Court in the context of the inclusionary part of the tax benefit rule, by arguing that the standard does not apply to the exclusionary part. However, the Court of Appeals for the Ninth Circuit, to which this case is appealable, recently stated that the exclusionary part of the tax benefit rule is "limited to cases in which a later event turns out to be fundamentally inconsistent with the premise on which the deduction was initially based." *Hudspeth v. Commissioner,* 914 F.2d 1207, 1212-1213 (9th Cir. 1990), revg. and remanding on other grounds a Memorandum Opinion of this Court. See also *Home Mutual Insurance Co. v. Commissioner,* 639 F.2d 333, 345-346 (7th Cir. 1980), affg. in part, revg. in part, and remanding in part 70 T.C. 944 (1978) ("the exclusionary aspect * * * becomes relevant only after the Commissioner has employed the inclusionary aspect"); *Allstate Insurance Co. v. United States,* 20 Cl. Ct. 308, 313 (1990).

In this case, there is nothing "fundamentally inconsistent" about the corporation's deductions of taxes and interest followed by the inclusion of the proceeds of the condominium sales in its gross sales for the years in which the sales are made. Indeed, the record clearly establishes that those sales were contemplated, and strived for, from the beginning of the corporate existence.

Finally, petitioners argue that *Smyth v. Sullivan,* 227 F.2d 12 (9th Cir. 1955), is identical to the present case. In that case, an estate had liabilities that exceeded the value of the assets at the decedent's death. The executor decided to hold two parcels of real property until an advantageous sale could be made. As a result, carrying charges were incurred over a number of years. When the property was finally sold, the executor excluded from taxable gain a sum equal to the carrying charges previously deducted without tax benefit. The Court of Appeals, permitting the exclusion, reasoned that the sale and the administration of the property were an integrated transaction. 227 F.2d at 14. But see *Hudspeth v. Commissioner, supra.*

Petitioners point out that the stipulation in the instant case contains a statement that the corporation's "sole business was the construction of a 15-unit condominium building and sale of the condominium units in a single integrated transaction." Because the Court of Appeals in *Smyth v. Sullivan, supra,* viewed the taxpayer-estate's holding and sale of the property in that case as an integrated transaction, petitioners argue that the two cases are indistinguishable. Respondent does not agree with petitioners' interpretation of the stipulation, contending it means only that the sale of the 13 condominium units in 1984 was an integrated transaction.

Regardless of the precise meaning of the stipulation, we do not think it aids petitioners' cause. The estate in *Smyth v. Sullivan, supra,* was a single entity and the executor had as his single mission the liquidation of the estate's assets. In contrast, the corporation and petitioners are two separate entities. As a C corporation, the corporation built, rented, and sold one of the condominium units. As an S corporation, it rented the units for a couple of years and then sold 13 of them. These varied activities can hardly be viewed as an integrated transaction. Without the subchapter S election, petitioners as individuals would have no ground for claiming any deductions for expenditures by the corporation. By taking advantage of the S corporation election, petitioners submitted themselves to the statutory safeguards designed to prevent the abuse of such elections, including the flat prohibition imposed by section 1371(b)(1) against the deduction by an electing corporation of net operating losses incurred by a subchapter C corporation, and the specific provision in section 111(c) that increases in net operating losses will be treated as tax benefits for purposes of the tax benefit rule. *Smyth v. Sullivan, supra,* is inapposite.

*Decision will be entered for the respondent.*