AMORIENT, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 15737–92.          Filed August 9, 1994.

*Ronald R. St. John,* for petitioner.
*Thomas R. Lamons* and *Miles D. Friedman,* for respondent.

## OPINION

RAUM, *Judge:* The Commissioner determined an income tax deficiency of $722,126 for petitioner's taxable year ending February 29, 1980. At issue is whether petitioner may carry back and claim as part of its consolidated net operating loss deduction for that year a net operating loss incurred by a corporate subsidiary that was an S corporation in the carryback year. The issue arises under the consolidated return regulations issued pursuant to section 1502,[1] and also calls into play various other provisions of the Code and regulations. The case was submitted fully stipulated pursuant to Rule 122.

Petitioner is a Delaware corporation with principal offices in Laguna Niguel, California, on the date it filed its petition. It was incorporated in July 1973.[2] During all relevant years, it was the parent corporation of an affiliated group of corporations and filed consolidated Corporation Income Tax Returns (Forms 1120). Petitioner annually reported Federal taxes on the basis of a fiscal year ending on the last day of

---

[1] Except as otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Petitioner was incorporated as Synergy Co. on or about July 9, 1973. Its name was thereafter changed to Amorient Petroleum, Inc., on Feb. 27, 1974, and finally to Amorient, Inc., on July 17, 1980.

February. All of its outstanding stock was owned by two individuals, William McDonald, who owned 970 shares, and Philip Meyer, who owned 30 shares.

On August 31, 1982, petitioner acquired all of the stock of Allen Properties Development Co., Inc. (APD), a California corporation engaged in the real estate development business. APD was incorporated in December 1979. Prior to the acquisition, APD's stock was owned by five individuals,[3] and its tax returns were filed on the basis of a fiscal year ending November 30.

On February 13, 1980, APD properly elected to be treated for Federal tax purposes as subject to taxation under subchapter S.[4] In accordance with its election, APD filed separate Small Business Corporation Income Tax Returns (Forms 1120S) for its fiscal years ending November 30, 1980 and 1981.

On August 31, 1982, when all of its stock was acquired by petitioner, APD ceased to qualify as an electing small business corporation (i.e., an S corporation) within the meaning of section 1371(a) as in effect prior to the Subchapter S Revision Act of 1982 (1982 Act), Pub. L. 97–354, 96 Stat. 1669–1700, which became effective for tax years beginning after December 31, 1982.[5]

---

[3] Prior to petitioner's acquisition of APD, APD's stock was owned as follows:

| Name | No. of shares owned |
| --- | --- |
| Kathleen R. Allen | 100 shares |
| Scott A. Allen | 100 shares |
| Frank E. Allen | 100 shares |
| Paul C. Allen | 100 shares |
| Charles O. Allen | 600 shares |

[4] The term "subchapter S" is a commonly used shorthand expression for subch. S of ch. 1 of subtit. A of the Internal Revenue Code. At the time of APD's election on Feb. 13, 1980, the applicable Internal Revenue Code provisions, pursuant to which eligible corporations could elect tax treatment under subch. S, were secs. 1371 and 1372 as then in effect. Under these provisions, the term "S corporation" was not used. The statutory provisions in effect at that time instead referred to an "Electing Small Business Corporation." Sec. 1371(b). The provisions of former secs. 1371 and 1372 are now contained in secs. 1361 and 1362, which use the term "S corporation" in lieu of "Electing Small Business Corporation". The terms are hereinafter used interchangeably. In contrast, provisions relating to corporations generally are found in subch. C, and corporations governed by that subchapter are often referred to as "C corporations".

[5] The parties have stipulated that at the time APD's stock was acquired by petitioner, "APD became an 'ineligible corporation' within the meaning of I.R.C., section 1361(b)(2)(A), and its election to be treated as a small business corporation was terminated pursuant to I.R.C. section 1362(d)(2)." The parties' stipulation mistakenly uses certain terminology (e.g., "ineligible corporation") and section references from the Internal Revenue Code in effect *after* the Dec. 31, 1982, effective date of the Subchapter S Revision Act of 1982 (1982 Act), Pub. L. 97–354, 96 Stat. 1669–1700. However, the net operating loss here at issue was deducted as a carryback against petitioner's consolidated taxable income for the year ending Feb. 29, 1980; i.e., *prior to*

As a result of its acquisition by and affiliation with petitioner, APD was required to report Federal taxable income for each of 2 short fiscal-year periods: the preacquisition period from December 1, 1981, through August 31, 1982, for which it was required to file a separate return as an electing small business corporation,[6] and the postacquisition period from September 1, 1982, through February 28, 1983, during which it, as a C corporation, was required to report as part of the group of corporations included in petitioner's consolidated return for petitioner's fiscal year ending February 28, 1983. Sec. 1.1502–76, Income Tax Regs.

After APD's stock was acquired by petitioner, APD was included in the affiliated group of corporations which joined in the filing of petitioner's consolidated return, commencing with petitioner's fiscal year ending February 28, 1983 (fiscal 1983). In calculating its consolidated taxable income or loss for the fiscal year ending February 28, 1983, petitioner properly included APD's net operating loss for the short year period from September 1, 1982, through February 28, 1983. Petitioner's consolidated return for the fiscal year ending February 28, 1983, reflected a consolidated net operating loss of $1,464,459, which was carried back and deducted in full from petitioner's consolidated taxable income for the fiscal year ending February 29, 1980. Of the amount thus carried back and deducted, $208,416 was attributable to APD's short period net operating loss.

Among the adjustments in the deficiency notice, the Commissioner disallowed the portion of petitioner's fiscal 1980 net operating loss carryback deduction that was attributable to APD's $208,416 fiscal 1983 net operating loss. After concessions, the only matter remaining in controversy is whether that $208,416 is deductible by petitioner for its fiscal year ending February 29, 1980. We hold that it is not.

An affiliated group of corporations is permitted, pursuant to section 1501, to file a single, consolidated corporate income tax return in lieu of filing separate returns for each of the members of the group. Section 1501 provides, however, that

the Dec. 31, 1982, effective date of the 1982 Act. We, therefore, refer in the text above to sections in subch. S as in effect prior to the 1982 Act.

[6] APD erroneously filed a Corporation Income Tax Return (Form 1120) rather than a Small Business Corporation Income Tax Return (Form 1120S) for the short period from Dec. 1, 1981, through Aug. 31, 1982. However, APD's erroneous filing is not relevant here and does not affect the outcome of this case.

the "making of a consolidated return" subjects all such affiliated corporations to the consolidated return regulations issued under section 1502. Section 1502 instructs the Secretary to—

prescribe such regulations as he may deem necessary in order that the tax liability of any affiliated group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be * * * determined, * * * in such manner as clearly to reflect the income tax liability * * *

The applicable consolidated return regulations under section 1502 in this case are sections 1.1502–21 and 1.1502–79, Income Tax Regs., pertaining to the "Consolidated net operating loss deduction" and "Separate return years" of affiliated group members, respectively.

Section 1.1502–21(a), Income Tax Regs., states that "The consolidated net operating loss deduction shall be an amount equal to the aggregate of the consolidated net operating loss carryovers and carrybacks to the taxable year (as determined under paragraph (b) of this section)." And section 1.1502–21(b)(1), Income Tax Regs., defines consolidated net operating loss carryovers and carrybacks as including "any consolidated net operating losses * * * of the group, plus any net operating losses sustained by members of the group in separate return years, which may be carried over or back to the taxable year under the principles of section 172(b)." However, it qualifies the definition by adding that "such consolidated carryovers and carrybacks shall not include any consolidated net operating loss apportioned to a corporation for a separate return year pursuant to paragraph (a) of § 1.1502–79". *Id.* The apportionment requirement is set forth in section 1.1502–79(a)(1)(i), Income Tax Regs., which provides that

If a consolidated net operating loss can be carried under the principles of section 172(b) and paragraph (b) of § 1.1502–21 to a separate return year of a corporation * * * which was a member in the year in which such loss arose, then the portion of such consolidated net operating loss attributable to such corporation * * * shall be apportioned to such corporation * * * and shall be a net operating loss carryover or carryback to such separate return year; accordingly, such portion shall not be included in the consolidated net operating loss carryovers or carrybacks to the equivalent consolidated return year.

Section 1.1502–79(a)(1)(i), Income Tax Regs., thus precludes petitioner from carrying back and deducting from its consolidated taxable income for fiscal 1980 the part of its consolidated net operating loss for fiscal 1983 attributable to APD's short period operations[7] if such part "can be carried [back] under the principles of section 172(b) and paragraph (b) of section 1.1502–21 to a [prior] separate return year of * * * [APD]". *Id.* The critical question in the present case is therefore whether anything in either of those provisions, Code section 172(b) or section 1.1502–21, Income Tax Regs., restricts the carryback of the APD short period loss to APD's prior separate return years. We find that nothing in either of those provisions limits the carryback of that loss to a prior separate return year of APD. Section 172(b) merely sets forth the applicable carryback and carryover periods for net operating losses generally.[8] And the only reference that section 1.1502–21, Income Tax Regs., makes to "separate return [years]" is its statement that the consolidated net operating loss deduction does not include any net operating losses otherwise *apportionable to separate return years*, pursuant to section 1.1502–79, Income Tax Regs. That statement in the regulation does not in any way limit or otherwise restrict petitioner's ability to carry the APD loss in the current consolidated year back to APD's prior separate return years. If anything, it supports it.

Petitioner contends on brief that it was prevented from carrying the APD short period loss back to the APD separate return years preceding the loss year by reason of Code section 1373(d) and section 1.1374–1(a), Income Tax Regs.[9] However, the regulation at issue in this case, section 1.1502–79(a), Income Tax Regs., does not refer to either of those provisions or to any other provisions under subchapter S, but rather only to Code section 172(b) and section 1.1502–21,

---

[7] This portion of petitioner's consolidated net operating loss is at times referred to as the "APD post-acquisition short period loss", the "APD short period loss", or the "APD loss".

[8] Sec. 172(b)(1)(A) and (B) provides generally for the carryback of a net operating loss to each of the 3 taxable years preceding the taxable year of the loss and then to each of the 15 taxable years following the taxable year of the loss. Sec. 172(b)(2) provides that the net operating loss for the loss year shall be carried to the earliest of the taxable years to which it may, by reason of par. (1), be carried, and that the portion of the loss carried to each of the other taxable years shall be the excess, if any, of the amount of the loss over the sum of taxable income for each of the prior taxable years to which the loss may be carried.

[9] The versions of sec. 1373 and sec. 1.1374–1, Income Tax Regs., referred to above are those in effect prior to the enactment of Subchapter S Revision Act of 1982, Pub. L. 97–354, 96 Stat. 1669–1700, which became effective for years beginning after Dec. 31, 1982.

Income Tax Regs., neither of which poses an impediment to the carryback of the loss at issue to the APD separate return years.

Moreover, petitioner's argument is unpersuasive, even on the basis of the very provisions it cites. Section 1373(d) reads in pertinent part as follows:

SEC. 1373(d). TAXABLE INCOME.— For purposes of this subchapter, the taxable income of an electing small business corporation shall be determined without regard to—
    (1) the *deduction* allowed by section 172 (relating to net operating loss deduction) * * * [Emphasis added.]

Section 1.1374–1(a), Income Tax Regs., reiterates the statutory proscription on net operating loss deductions, by stating that "Under section 1373(d), an electing small business corporation is not allowed a *deduction* for a net operating loss." (Emphasis added.) Significantly, both provisions refer to the "deduction"—as opposed to the carryback or carryover—of a net operating loss. Neither provision states at any point that a corporation's status as an electing small business corporation has any impact whatsoever on the carryback/carryover scheme provided for in section 172(b). Indeed, the regulation contains other language which recognizes that net operating losses *are* carried back (or carried over) even to years during which the losses cannot be deducted because an election under subchapter S is in effect. Specifically, the third and fourth sentences in section 1.1374–1(a), Income Tax Regs., read as follows:

In applying section 172(b)(1) and (2) to a net operating loss sustained in a taxable year in which the corporation was not an electing small business corporation, a taxable year in which the corporation was an electing small business corporation is counted as a taxable year *to which such net operating loss is carried back or over*. However, the taxable income for such year as determined under section 172(b)(2) is treated as if it were zero for purposes of computing the balance of the loss available to the corporation as a carryback or carryover to other taxable years in which the corporation is not an electing small business corporation. [Emphasis added.]

Thus, while the regulation does preclude the deduction of the loss at issue in any of APD's separate electing small business corporation (i.e., S corporation) return years, it nonetheless also provides that the loss "is carried back" to such separate return years. *Id.* Petitioner's theory therefore not only

runs afoul of the applicable consolidated return regulations, but also is at odds with section 1.1374–1, Income Tax Regs., which is the very regulation that it cites in support of its theory.

To be sure, it is difficult to believe that the statute and regulations provided for a carryback of a net operating loss and at the same time deprived the corporation of any tax benefit of that loss. If that were so, this would indeed be the same as the case of the gods' tempting Tantalus with food and water while withdrawing them from his reach whenever he attempted to eat or drink. And if that were all there were to the case before us, we would be inclined to conclude that the statute and regulations intended no such strange result. But there is more to this case, much more, that leads to the opposite conclusion. In this case the net operating loss, although unavailable as a deduction in fiscal year 1980, is kept in suspense until a year in which APD can use it as a C corporation. Cf. *Rosenberg v. Commissioner*, 96 T.C. 451, 454, 456 (1991). Here, that takes place while APD is a member of the consolidated group, and can result in a net operating loss carryover for the 15-year period following fiscal year 1983, available for deduction either by the consolidated group or by APD itself as a C corporation if it should cease being a member of the group.

Moreover, even apart from the regulations, the result urged by petitioner must be rejected as inconsistent with the underlying purpose of the rules calling for the filing of consolidated returns. The first statutory provisions authorizing the filing of consolidated returns by affiliated taxpayers were enacted as part of the Revenue Act of 1918.[10] The Senate Finance Committee report[11] stated:

---

[10] Pertinent portions of sec. 240(a), Revenue Act of 1918, ch. 18, 40 Stat. 1057, 1081–1082, read as follows:

### CONSOLIDATED RETURNS.

Sec. 240. (a) That corporations which are affiliated within the meaning of this section shall, under regulations to be prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income * * * for the purposes of this title * * * and the taxes thereunder shall be computed and determined upon the basis of such return * * *

[11] The House bill did not provide for the filing of consolidated returns. See H. Rept. 767, 65th Cong., 2d Sess. (1918), 1939–1 C.B. (Part 2) 86, 95. However, the Conference Committee adopted the amendment in the Senate bill that authorized the filing of consolidated returns by affiliated taxpayers. See H. Conf. Rept. 1037, 65th Cong., 3d Sess. (1919), 1939–1 C.B. (Part 2) 130, 150.

While the committee is convinced that the consolidated return tends to conserve, not to reduce, the revenue, the committee recommends its adoption not primarily because it operates to prevent evasion of taxes or because of its effect upon the revenue, but *because the principle of taxing as a business unit what in reality is a business unit is sound and equitable* and convenient both to the taxpayer and to the Government. [S. Rept. 617, 65th Cong., 3d Sess. (1918), 1939–1 C.B. (Part 2) 117, 123; emphasis added.]

As the quoted passage indicates, the consolidated return provisions were enacted for the purpose of taxing an affiliated group of corporations as a single, economic "business unit". This statutory purpose dictates that a consolidated net operating loss may be carried back to prior consolidated return years only to the extent that the corporations whose losses give rise to the consolidated net operating loss were members of the group (i.e., the "business unit") during that year. That legislative policy is now reflected in section 1.1502–79(a), Income Tax Regs., considered above. However, even prior to the adoption of that regulation, this Court had stated that

It is fundamental that business losses may be offset, under section 172 * * * only against the gains of the taxpayer who suffered such loss. * * * [*Midland Management Co. v. Commissioner*, 38 T.C. 211, 215 (1962), vacated on appeal 316 F.2d 190 (8th Cir. 1963); citations omitted.]

See also *Trinco Indus., Inc. v. Commissioner*, 22 T.C. 959 (1954). Petitioner would have us disregard this long established principle by allowing it to carry back the part of its consolidated net operating loss attributable to APD to a prior consolidated return year during which APD was in existence but was not a member of petitioner's consolidated group. See *Electronic Sensing Prods., Inc. v. Commissioner*, 69 T.C. 276, 281 (1977); *J.A. Tobin Constr. Co. v. Commissioner*, 85 T.C. 1005, 1014–1016 (1985).

Petitioner makes another argument in which it analogizes APD's prior status as an electing small business corporation to that of a partnership. The thrust of petitioner's contention is that APD should, for purposes of the regulation's restriction on carryback losses, be treated the same as a partnership that has been acquired by a group of corporations filing a consolidated return. Petitioner contends that any post-acquisition losses incurred by an acquired partnership would not be restricted under section 1.1502–79(a), Income Tax

Regs., which is concerned only with a separate return year of a corporation. Accordingly, the argument goes, such net operating loss of the acquired partnership could be carried back to prior consolidated return years of the corporate group, and since the tax treatment of an electing small business corporation is, in several respects, similar to that of a partnership, petitioner should likewise not be prevented from carrying back APD's portion of the consolidated net operating loss by reason of section 1.1502–79(a), Income Tax Regs.

The simple answer to this argument is that APD is not a partnership. It was and continues to exist as a corporation. As such, it is subject to the rules governing deductions by corporations, including in this case the consolidated return provisions, one of which is section 1.1502–79(a), Income Tax Regs. If APD were a partnership, and if petitioner had acquired all partnership interests in APD, then the partnership would cease to exist as such. The business formerly conducted by the partnership would continue to exist, if at all, only as an unincorporated segment of petitioner's business. It is therefore quite true that any net operating loss sustained by that segment of petitioner's business would be included in the consolidated group's net operating loss and could then be carried back and deducted in petitioner's prior consolidated return. In sharp contrast, APD was a corporation, albeit an S corporation, and survived as a corporate entity, as a C corporation, when acquired by petitioner. The difference in result in respect of the issue before us is the natural consequence of the well recognized difference, both in tax law and in law generally, between a corporation and an unincorporated entity. Apart from certain situations permitting the lifting of the corporate veil, the corporate entity and the legal consequences flowing therefrom are controlling. *Moline Properties, Inc. v. Commissioner,* 319 U.S. 436 (1943); *Strong v. Commissioner,* 66 T.C. 12, 21–26 (1976), affd. without published opinion 553 F.2d 94 (2d Cir. 1977). Such consequences in this case include those required by section 1.1502–79(a)(1), Income Tax Regs. Petitioner has not presented any reasons persuasive to us why it should not be subject to the normal tax consequence of APD's corporate status, as opposed to those of an unincorporated segment of petitioner's business that had previously been carried on as a partnership.

We have considered other arguments made by petitioner and have found them unpersuasive.

To reflect the concessions of the parties,

*Decision will be entered under Rule 155.*