110 T.C. No. 6

UNITED STATES TAX COURT

ST. CHARLES INVESTMENT CO., BURTON C. BOOTHBY,
TAX MATTERS PERSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5793-96.                    Filed February 5, 1998.


Prior to Jan. 1, 1991, X was a closely held C
corporation, which incurred passive activity losses
(PAL's) giving rise to suspended PAL's pursuant to sec.
469, I.R.C.  A portion of the suspended PAL's was
attributable to depreciation.  X reduced the bases of
the properties used in the passive activities by the
amounts of such depreciation.  X elected S corporation
status as of Jan. 1, 1991.  During 1991, it disposed of
several of the passive activities and calculated the
gain (loss) from those dispositions using the bases of
the properties involved as reduced by the depreciation.
X used suspended PAL's allocable to the sold activities
which had arisen prior to 1991, in calculating its
taxable income for 1991.  <u>Held</u>, sec. 1371(b)(1),
I.R.C., precludes X from using its suspended PAL's in
1991, an S corporation year.  <u>Held, further</u>, X may not
recompute the bases of the sold properties to include
amounts representing the portions of the suspended
PAL's attributable to depreciation.

Darrell D. Hallett, Larry N. Johnson, Robert J. Chicoine, and John M. Colvin, for petitioner.

Cathy A. Goodson and William A. McCarthy, for respondent.


OPINION


TANNENWALD, Judge:  This case comes before us on cross-motions for partial summary judgment by the parties under Rule 121.[1]  The issues for decision are:

(1) Whether suspended passive activity losses (PAL's) incurred by a closely held C corporation that later elects to be an S corporation may be deducted by the then S corporation in the year the corporation disposes of its entire interest in the activity generating the losses, and if not,

(2) whether the basis of the assets used in the activity may be recomputed to restore amounts for portions of the suspended PAL's attributable to depreciation (and the gain or loss from the disposition commensurately recalculated).

Summary judgment as to those issues is appropriate in this case because there is no genuine issue of fact, and a decision can be made as a matter of law.  Rule 121(b); Northern Ind. Pub. Serv. Co. v. Commissioner, 101 T.C. 294, 295 (1993).

---

[1]  Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Background

At the time the petition was filed, Burton C. Boothby (petitioner) resided in Denver, Colorado, and St. Charles Investment Company (St. Charles) had its principal place of business in Englewood, Colorado. St. Charles filed its 1991 U.S. Income Tax Return as an S corporation with the Internal Revenue Service at Odgen, Utah.

Prior to 1991, St. Charles was a closely held C corporation as defined under section 469(j)(1). St. Charles operated rental real estate giving rise to PAL's under section 469 in 1988, 1989, and 1990. St. Charles elected S corporation status effective January 1, 1991. Immediately prior to the effective date of the S corporation election, St. Charles had suspended PAL's from its real estate activities.

During 1991, St. Charles disposed of certain of the rental properties (the properties). St. Charles reported the sales of the properties and deducted the suspended PAL's arising from the properties on its 1991 S corporation tax return. Six of the seven properties sold produced losses of $9,237,752; the seventh produced a gain of $6,161.

A portion of the suspended PAL's was attributable to depreciation for which St. Charles had adjusted the bases of the properties. St. Charles used these adjusted bases in calculating its gain or loss from the sales of the properties.

Effective March 30, 1995, St. Charles elected to terminate its S corporation status and reverted to C corporation status.

Discussion

The parties have locked horns on the impact of sections 469(b) and 1371(b)(1). St. Charles contends that section 469 governs and that section 1371(b) has no application under the circumstances herein. Respondent takes a diametrically opposed position and contends that section 1371(b) controls and that therefore section 469 is inapplicable.

Section 469(a) disallows the PAL for the taxable year to any individual, estate or trust, any closely held C corporation, and any personal service corporation. The term "passive activity loss" generally means the amount by which the aggregate losses from all passive activities for the taxable year exceed the aggregate income from all passive activities for such year. Sec. 469(d)(1). However, a closely held C corporation, unlike the other taxpayers to whom section 469 applies, also may use its PAL for a taxable year to offset net active income for such year, and the amount so used will not be disallowed under section 469(a). Sec. 469(e)(2). The term "passive activity" includes any rental activity, with exceptions not relevant herein. Sec. 469(c)(2). Although section 469(a) disallows PAL's, section 469(b) provides: "Except as otherwise provided in this section, any loss or credit from an activity which is disallowed under subsection (a) shall

be treated as a deduction or credit allocable to such activity in the next taxable year."

Section 469(f)(2) provides:

> (2)  Change in status of closely held C corporation or personal corporation.--If a taxpayer ceases for any taxable year to be a closely held C corporation or personal service corporation, this section shall continue to apply to losses and credits to which this section applied for any preceding taxable year in the same manner as if such taxpayer continued to be a closely held C corporation or personal service corporation, whichever is applicable.

Section 469(g)(1)(A) provides that, in the taxable year in which a taxpayer disposes of his entire interest in any passive activity in a transaction where all the gain or loss realized on such disposition is recognized, then generally, the excess of--

> (i) any loss from such activity for such taxable year (determined after the application of subsection (b)), over

> (ii) any net income or gain for such taxable year from all other passive activities (determined after the application of subsection (b)),

> shall be treated as a loss which is not from a passive activity.

Thus, the usual result upon a taxable disposition of a passive activity is that the taxpayer may use any remaining suspended PAL allocated to that activity first against passive income from the same activity, then against net passive income from other passive activities, and then as a nonpassive loss.

The effect of making an election to be an S corporation is that, generally, an S corporation is not subject to income tax;[2] instead, the shareholders are taxed on their respective shares of the items constituting the S corporation's taxable income. Secs. 1363, 1366. Section 1371(b)(1) provides that "No carryforward, and no carryback, arising for a taxable year for which a corporation is a C corporation may be carried to a taxable year for which such corporation is an S corporation."[3] On the basis of this provision, respondent disallowed the deduction of the suspended PAL's.

Before proceeding to discuss the specific arguments of the parties, we think it important to recognize the purposes which underlay the enactment of sections 469 and 1371 and the overall context applicable to those sections. Section 469 was enacted in 1986 by section 501(a) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2233, in response to legislative concern that certain categories of taxpayers were engaging in activities which generated losses and using those losses to shelter income from other activities. See Schaefer v. Commissioner, 105 T.C. 227, 230 (1995). It is essentially a transactional provision, i.e., it deals with the tax treatment of particular activities. In

---

[2] The exceptions are the taxes imposed on built-in gains under sec. 1374 and on excess net passive income under sec. 1375.

[3] See infra pp. 20-22 for a discussion of the impact of other provisions of sec. 1371(b).

determining the existence of a PAL, section 469 treats each activity separately.

Section 1371 was enacted in 1982 by section 2 of the Subchapter S Revision Act of 1982, Pub. L. 97-354, 96 Stat. 1669, as part of a continuing effort by the Congress to provide a statutory framework whereby shareholders of closely held corporations could obtain substantially the same tax treatment as they would have received if they had conducted their activities as a partnership without being required to accept the personal liability attaching to a partner. Thus, subchapter S, of which section 1371 was a part, dealt with the status of a taxpayer by permitting a corporation to continue as the same corporate entity but treating its income and deductions as those of its shareholders and taxing them accordingly. As we observed in Frederick v. Commissioner, 101 T.C. 35, 43 (1993):

> conversion from a C corporation to an S corporation does not create a new taxpayer or otherwise involve a transfer of assets and liabilities from one entity to another. Following its S corporation election, Quanta is still the same taxpayer; Quanta merely has subjected its income and expenses to a new taxing regime for Federal income tax purposes. * * *

This structural difference, i.e., transactional versus taxpayer status, is a significant element in synthesizing the application of sections 469(b) and 1371(b)(1). It facilitates our ability to take into account the objectives of Congress, namely, (1) including section 469(b) to ease the restrictive thrust of section 469 generally by limiting, but not necessarily

eliminating, use of PAL's, and (2) including section 1371(b)(1) to narrow the liberalizing thrust of subchapter S generally, and to prevent abuse by limiting, but not necessarily eliminating, the ability of a corporation to utilize subchapter S status to pass on its C status losses to its shareholders, see Rosenberg v. Commissioner, 96 T.C. 451, 455 (1991).

Respondent's position is straightforward.  Respondent maintains that section 1371(b)(1) is clear on its face and that the word "carryforward" in that section is not limited and encompasses PAL's.  Respondent argues that nothing in the legislative history of either section 1371(b)(1) or 469 casts doubt on respondent's position and that petitioner's attempts to accord a narrow interpretation to the word "carryforward", both directly and by interpolating section 469, are unavailing.

Petitioner's arguments fall into two categories:  (1) Suspended PAL's are not "carryforwards" within the meaning of section 1371(b)(1), because the PAL rules, set forth in section 469, constitute an accounting method which St. Charles should continue to use after its conversion to an S corporation; and (2) pursuant to principles of statutory construction, the specific language of section 469, particularly subsections (f)(2) and (g)(1)(A), precludes the application of section 1371(b)(1). Petitioner asserts that, unless it is permitted to utilize the suspended PAL's in the year of disposition of the activities

giving rise to them, its right to use those PAL's will be lost forever.

We deal first with petitioner's position in respect of the proper interpretation of section 1371(b)(1). Clearly, Congress could not have had PAL's specifically in mind when it enacted section 1371(b)(1) in 1982, since section 469 was not enacted until 1986. But even petitioner does not suggest that this factor, in and of itself, is determinative. Rather, petitioner goes on to argue that the word "carryforward" was intended to refer only to those items which are specifically so described in other provisions of the Code.[4] We disagree.

In construing the meaning of a statute, we seek the plain meaning of its language, assuming that Congress uses common words in their popular meaning, and relying on the words as generally understood. Norfolk S. Corp. v. Commissioner, 104 T.C. 13, 36-37 (1995) and cases cited thereat, modified 104 T.C. 417 (1995). The language of section 1371(b) ("No carryforward, and no carryback") is broad, unlike that of other sections which specify certain types of carryforwards and carrybacks. See supra note 4. The legislative history of section 1371(b) supports a broad

---

[4] See, e.g., sec. 170(d)(1) and (2) (charitable contributions); sec. 38(a) (business credit carryforwards and carrybacks); sec. 172 (net operating loss carryovers and carrybacks); sec. 904(c) (foreign tax credit); sec. 1212 (capital loss carrybacks and carryovers); sec. 1374(b)(2) and (3) (net operating loss carryforward, capital loss carryforward, and business credit carryforwards).

interpretation in that the prohibition reflected in this provision appears in similar terms and follows a list of specific examples of passthrough items. S. Rept. 97-640 (1982), 1982-2 C.B. 718, 725; H. Rept. 97-826 (1982), 1982-2 C.B. 730, 737. Although section 469(b) does not use the term "carryforward", we think the phrase "shall be treated as a deduction * * * allocable to such activity in the next taxable year" has the same meaning. We think this is particularly true in the case of a closely held C corporation where passive losses are available as deductions against active losses. Our view in this respect is reinforced by that fact that the Senate Finance Committee report, accompanying the enactment of section 469, states that "Suspended passive activity losses for the year are <u>carried forward</u> indefinitely, but are not carried back" (emphasis added). S. Rept. 99-313 (1986), 1986-3 C.B. (Vol. 3) 1, 722; see also H. Conf. Rept. 99-841 (Vol. II) (1986), 1986-3 C.B. (Vol. 4) 1, 137, describing the Senate version of section 469 (there was no House of Representatives version) as providing that "Disallowed losses and credits are <u>carried forward</u>" (emphasis added). Moreover, while we recognize that the use of captions is limited, see section 7806(a), we think it not amiss, in the context of this case, to note that section 469(b) is entitled "Disallowed Loss or Credit <u>Carried</u> to Next Year" (emphasis added).

Petitioner points to Congress' placement of section 469 within subchapter E, part II of the Code, entitled "Methods of

Accounting".  Petitioner argues that the PAL rules, like other methods of accounting, such as basis and depreciation, are to be continued after a C corporation becomes an S corporation.  As the subject of an accounting method, petitioner argues, PAL's are not carryovers within the meaning of section 1371(b)(1).

"The term 'method of accounting' includes not only the over-all method of accounting of the taxpayer but also the accounting treatment of any item."  Sec. 1.446-1(a)(1), Income Tax Regs.  A material item, for purposes of a method of accounting, is any item which involves the proper time for the inclusion of the item in income or the taking of a deduction.  Sec. 1.446-1(e)(2)(ii), Income Tax Regs.  The legislative history of section 469 expresses concern over the mismatching of deductions and income from passive activities which leads to the sheltering of other income.  S. Rept. 99-313, supra, 1986-3 C.B. (Vol. 3) at 716-717.

An accounting method addresses the timing of the deduction of an item, it does not provide for any deduction per se.  Sec. 1.446-1(a)(1), Income Tax Regs., states:  "These methods of accounting for special items include the accounting treatment prescribed for research and experimental expenditures, soil and water conservation expenditures, depreciation, net operating losses, etc."  Section 1371(b)(1) clearly precludes the carryover of net operating losses (NOL's).  Rosenberg v. Commissioner,

supra; cf. sec. 1374(b)(2)[5] (allowing NOL carryforward "Notwithstanding section 1371(b)(1)"). Similarly, it appears Congress intended section 1371(b)(1) to apply to carryover of research and other business credits. See sec. 1374(b)(3)(B) (allowing business credit carryforwards "Notwithstanding section 1371(b)(1)"). In short, Congress evinced an intention to recognize specific exceptions, rather than a general exception to the application of section 1371(b)(1). It does not follow, as petitioner suggests, from the fact that the statute specifies certain items to be excluded from the application of section 1371(b) for one purpose, namely built-in gains under section 1374, that other items are excluded from the application of section 1371(b) for other purposes.

Thus, even if section 469 is treated as an accounting method, we are still left with the question whether section 1371(b)(1) applies to a particular item, in this case, PAL's. Moreover, we note that, although Congress placed section 469 in a part of the Code entitled "Methods of Accounting", the legislative history indicates that such treatment is not as significant as petitioner would have us believe. The statute itself and the legislative history treat section 469 separately

---

[5] Sec. 1374(b) provides limited exceptions for the purpose of calculating the tax on built-in gains, a tax imposed on the S corporation resulting from a subchapter S election by a C corporation which at the time of the election has unrealized gains on its properties. See supra note 2. The instant case does not involve the tax on built-in gains.

from the provisions dealing with accounting matters.  Compare

title V entitled "Tax Shelter Limitations; Interest Limitations",

which includes the provisions of section 469, with title VIII

"Accounting Provisions" of the Tax Reform Act of 1986, Pub. L.

99-514, 100 Stat. 2085, 2233-2249, 2345-2375; H. Conf. Rept. 99-

841 (Vol. II), supra, 1986-3 C.B. (Vol. 4) at 134, 285.

We are not impressed by petitioner's attempt to reinforce

the "method of accounting" argument that PAL's should not be

treated in the same fashion as NOL's under section 1371(b)(1) by

pointing to the fact that the regulations under section 469

disallow ratably the deductions which enter into the

determination of whether the taxpayer has incurred a PAL.  The

regulations upon which petitioner bases this argument provide:

> (ii)  Allocation within loss activities--(A)  In
> general.  If all or any portion of a taxpayer's loss
> from an activity is disallowed under paragraph
> (f)(2)(i) of this section for the taxable year, a
> ratable portion of each passive activity deduction
> (other than an excluded deduction (within the meaning
> of paragraph (f)(2)(ii)(B) of this section)) of the
> taxpayer from such activity is disallowed.  * * *
>
> *     *     *     *     *     *     *
>
> (iii)  Separately identified deductions.  In
> identifying the deductions from an activity that are
> disallowed under this paragraph (f)(2), the taxpayer
> need not account separately for a deduction unless such
> deduction may, if separately taken into account, result
> in an income tax liability for any taxable year
> different from that which would result were such
> deduction not taken into account separately.  * * *
> [Sec. 1.469-1T(f)(2), Temporary Income Tax Regs., 53
> Fed. Reg. 5706 (Feb. 25, 1988); emphasis added.]

According to petitioner, these regulations make it clear that deductions do not lose their character in determining a PAL but are the items that are carried over under section 469(b) whereas such deductions lose their character in the case of an NOL. We think petitioner reads too much into the regulations and in effect ignores the word "loss" in section 469(b). In this connection, we note that, with respect to section 469, the conference report on the Tax Reform Act of 1986 speaks of "Deductions in excess of income (i.e. losses)" and states: "Disallowed losses and credits are carried forward and treated as deductions and credits from passive activities in the next taxable year." (Emphasis added.) H. Conf. Rept. 99-841 (Vol. II), 1986-3 C.B. (Vol. 4) at 137. In sum, we view section 469 as denying the PAL deduction with the regulations merely supplying the mechanics for allocating expenses among the taxpayer's various activities in order to calculate the amount of expenses to be deducted in computing the PAL from a particular activity.

Going beyond the "method of accounting" argument, petitioner points to specific provisions of section 469 to support the position that PAL's are not carryovers for purposes of section 1371(b)(1). Petitioner argues that, since PAL's are not personal to the taxpayer but may follow the property as basis adjustments in certain types of transfers, PAL's more closely resemble basis (which does "carry over" from C corporation to S corporation) than NOL's (which do not).

In the cases of a disposition of an interest in a passive activity by gift or distribution of such an interest by an estate or trust, the basis of the interest is increased by the suspended PAL's allocated to that activity. Sec. 469(j)(6), (12). However, while the increase in basis affords the recipient the benefit of using the equivalent of the suspended PAL's upon the recipient's disposition of the activity, the original taxpayer is denied any deduction of the suspended PAL's in any taxable year. Sec. 469(j)(6), (12). Where the taxpayer transfers the interest in the passive activity by reason of death, the suspended PAL's allocated to that activity are treated as if there were a sale, but only to the extent that the PAL's allocated to that activity exceed the step-up in basis by reason of death to the transferee. Sec. 469(g)(2). The taxpayer is denied the deduction in any taxable year of the amount of the PAL's allocated to the disposed of activity which equal the amount of the basis step-up. Id.

We are not convinced by petitioner's arguments that suspended PAL's of St. Charles should be treated as basis adjustments and therefore should not be considered carryforwards within the meaning of section 1371(b)(1).

Finally, petitioner argues that, even if PAL's are carryforwards, section 469 is a specific provision which should prevail over the general provisions reflected by section 1371(b)(1). It is a basic principle of statutory construction that a specific statute controls over a general provision.

Bulova Watch Co. v. United States, 365 U.S. 753, 758 (1961). However, when two statutes are capable of coexistence, "it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 533 (1995); see DeSalvo v. IRS, 861 F.2d 1217, 1219 (10th Cir. 1988).

Petitioner points to section 469(b), (f)(2), and (g)(1) to sustain this position. Petitioner argues that the clause "Except as otherwise provided in this section" (emphasis added) in section 469(b) dictates the conclusion that section 1371(b)(1), not being in section 469, does not apply to PAL's and, therefore, St. Charles should be allowed to use the suspended PAL's.

As previously noted, see supra pp. 4-5, section 469(b) provides: "Except as otherwise provided in this section, any loss or credit from an activity which is disallowed under subsection (a) shall be treated as a deduction or credit allocable to such activity in the next taxable year."

Section 469(b) accomplishes two things: (1) It maintains the deductibility of suspended PAL's activity by activity, important to the overall working of section 469, and (2) it allows the taxpayer further opportunity to take such a loss. Even without the interplay of section 1371(b)(1), section 469(b) does not mean the taxpayer must recognize the loss in the immediately following year; the taxpayer may not have sufficient

passive activity income[6] to use all or any of the suspended PAL's in that year.  In such case, the unused suspended PAL's are again disallowed and will be similarly treated as a deduction in the next (third) year, and so on.  See H. Conf. Rept. 99-841 (Vol. II), supra, 1986-3 C.B. (Vol. 4) at 137; S. Rept. 99-313, supra, 1986-3 C.B. (Vol. 3) at 722 (where it is specified that suspended PAL's are "carried forward indefinitely").

Petitioner further points out that it is only using the suspended PAL's allocated to the properties which were sold, and not those allocated to other activities that St. Charles conducted.  Petitioner goes on to argue that the losses at issue stem entirely from the operation of section 469(g)(1)(A), see supra p. 5, not from section 469(a) and (b); that is, they consist solely of excess PAL's that "shall be treated as a loss which is not from a passive activity."  This, petitioner argues, is another reason why the losses which respondent disallowed are not carryovers and therefore section 1371(b) is inapplicable.

The application of section 469(g)(1)(A), however, turns on the meaning of the parenthetical phrase "determined after the application of subsection (b)" which appears twice therein, once with respect to the disposed activity and then with respect to all other passive activities.  There is no way to determine the amount of excess PAL's to be treated as nonpassive losses without

_____

[6]  For the closely held C corporation, this would include active income as well.  Sec. 469(e)(2).

the application of section 469(b). Indeed, a principal function of section 469(g) is to take into account the suspended PAL's created by section 469(a) and (b). Although the excess PAL's are no longer treated as PAL's, they are derived from suspended PAL's.

In our view, a precondition to the applicability of the parenthetical language in section 469(g)(1)(A) is that the suspended PAL's be available under section 469(b). Our previous analysis indicates that section 1371(b) makes the PAL's unavailable in the year at issue and therefore precludes the application of section 469(b) and consequently section 469(g)(1)(A).

Petitioner further argues that section 469(f)(2) provides specifically for the situation at issue herein. That section provides:

> If a taxpayer ceases for any taxable year to be a closely held C corporation * * *, this section shall continue to apply to losses and credits to which this section applied for any preceding taxable year in the same manner as if such taxpayer continued to be a closely held C corporation * * *.

Respondent responds that the legislative history of section 469(f)(2) indicates that this section was meant to apply to closely held C corporations that become "regular" C corporations, not to those that become S corporations.

While the legislative history discusses a closely held C corporation that, due to change in stock ownership, is no longer

closely held, it does so as an example of the situation that arises "when a corporation * * * subject to the passive loss rule ceases to be subject to the passive loss rule because it ceases to meet the definition of an entity subject to the rule."  S. Rept. 99-313, supra, 1986-3 C.B. (Vol. 3) at 728.  Under these circumstances and given the broad statutory language, we think that section 469(f)(2) applies to St. Charles, which ceased to be a closely held C corporation by virtue of its subchapter S election.

Section 469(f) ensures that once a taxpayer has suspended PAL's, the taxpayer's use of the suspended PAL's continues to be subject to section 469.  Thus, section 469(f)(1) provides that, where the activity is no longer passive with respect to the taxpayer, the unused PAL's are to be used to offset income from that activity, and any remaining PAL's shall be treated as arising from a passive activity.  Section 469(f)(2) provides that PAL's shall continue to be treated as such where the taxpayer is no longer a closely held C corporation (and otherwise would not be subject to section 469).  Thus, the passive nature of St. Charles' PAL's is preserved.

Petitioner argues that section 469(f)(2) requires St. Charles to use the suspended PAL's and that, if it is not permitted to use them against the gains from the disposition of the disposed passive activities, it will be denied the use of the PAL's forever.  Petitioner seeks to buttress this position by

arguing that section 469(b) allows those PAL's disallowed under section 469(a) to be used in subsequent years and that, if section 1371(b)(1) disallows the PAL's, section 469 does not apply because there is no other basis for allowing their subsequent use. Respondent argues that since St. Charles is the same taxpayer, albeit subject to a different taxing regime, section 1371(b)(1) merely prevents it from using the PAL's during the "new regime" but does not preclude their preservation for use by St. Charles when that "new regime" ends and St. Charles becomes a taxpayer subject to section 469, as a closely held C corporation.[7]

We think petitioner's position as to the dire consequence of applying section 1371(b) is unfounded in that it ignores the pattern reflected by section 1371(b) in its entirety, which provides:

> (b) No Carryover Between C Year and S Year.--
> (1) From C year to S year.--No carryforward, and no carryback, arising for a taxable year for which a corporation is a C corporation may be carried to a taxable year for which such corporation is an S corporation.
> (2) No carryover from S year.--No carryforward, and no carryback, shall arise at the corporate level for a taxable year for which a corporation is an S corporation.
> (3) Treatment of S year as elapsed year.-- Nothing in paragraphs (1) and (2) shall prevent treating a taxable year for which a corporation is an S corporation as a taxable year for purposes of determining the number of taxable years to which an item may be carried back or carried forward.

---

[7] Although not a fact involved in our analysis, we note that St. Charles reverted to C corporation status in 1995.

The clear import of section 1371 is that a change in the taxing regime applicable to a taxpayer as it moves from being an S corporation to a C corporation or vice versa should not be an occasion for permitting prior losses of one taxpayer from inuring to the benefit of another taxpayer. Thus, the losses of a C corporation should not inure to the benefit of its shareholders, thereby giving them an opportunity to utilize a deduction which would not otherwise have been available to them. Sec. 1371(b)(1).[8] Similarly, losses of an S corporation, which pass through, i.e., inure to the benefit of, its shareholders should not be taken away from them for tax purposes in order to offset income of their corporation which has forgone its S status. Sec. 1371(b)(2). To round out the picture, section 1371(b)(3) makes it clear that the losses remain available for future use although the clock will continue to tick for the purpose of computing the period of availability. Consequently, the application of section 1371(b)(1) to preclude St. Charles from using its PAL's during the year before does not extend to destroying their availability. See Amorient, Inc. v. Commissioner, 103 T.C. 161, 167 (1994). In this connection, we think it significant that, unlike NOL's, PAL's may be carried over indefinitely. See S. Rept. 99-313,

---

[8] We note that St. Charles is not seeking to use its suspended PAL's against gains from the disposition of passive activities. Rather, it seeks to utilize the disposition of those activities at a substantial loss as the occasion for converting the suspended PAL's into losses "not from a passive activity" under sec. 469(g)(1)(A), thereby creating a significant tax benefit to pass through to its shareholders.

supra, 1986-3 C.B. (Vol. 3) at 722.  Under section 469(b), contrary to petitioner's contention of permanent loss, they remain available for potential use in subsequent years if and when St. Charles relinquishes its S status.

In sum, we are satisfied that PAL's are losses within the meaning of section 1371.  Not only is the word "carryforward" in that section unqualified, but PAL's are in effect NOL's albeit computed separately for a particular activity and thus should not be treated any differently than NOL's to which section 1371 unquestionably applies.

Taking into account the language of the statute and the legislative history, including the objective of Congress in enacting sections 469(b) and 1371(b)(1), we conclude that St. Charles is precluded from carrying forward its suspended PAL's to the taxable year before us.[9]  We emphasize that, as our analysis has revealed, there is no conflict between sections 469(b) and 1371(b)(1) with the result that our preclusion of use in 1991 is grounded on the unavailability of the PAL's during that year and their continued availability for future use.

Adjustment of Basis for Suspended PAL's

Petitioner argues in the alternative that, if respondent is sustained on the suspended PAL's issue, St. Charles should be

---

[9]  We reiterate that this case does not involve the tax on built-in gain pursuant to sec. 1374, and thus our holding does not extend to the use of suspended PAL's in calculating such gain.

allowed to recompute the bases of the disposed properties to restore amounts for the portion of the suspended PAL's attributable to depreciation (and then recalculate the gain or loss realized from the dispositions). According to petitioner, the reductions in basis for depreciation should not have been taken because the depreciation deductions were neither "allowed" nor "allowable". Respondent's position is that the depreciation deductions were allowable; it was the PAL's that were disallowed.

To a substantial degree, petitioner's alternative argument is premised upon the assumption that we would hold that the suspended PAL's are lost as a result of the subchapter S election, an assumption which has proved to be erroneous. However, petitioner's arguments suggest that they should also apply even if the suspended PAL's are held to remain available for future use. Consequently, we shall discuss petitioner's alternative position.

Taxpayers are required to reduce the basis of property for depreciation by the greater of (1) the amount allowed as deductions in computing taxable income and resulting in a reduction for any taxable year of the taxpayer's taxes or (2) the amount allowable as deductions in computing taxable income whether or not the amount properly allowable would have caused a reduction for any taxable year of the taxpayer's taxes. Sec. 1016(a)(2); sec. 1.1016-3(a)(1)(i) and (b), Income Tax Regs. "'Allowable deduction' generally refers to a deduction which

qualifies under a specific Code provision whereas 'allowed deduction', on the other hand, refers to a deduction granted by the Internal Revenue Service which is actually taken on a return and will result in a reduction of the taxpayer's income tax." Lenz v. Commissioner, 101 T.C. 260, 265 (1993).

Petitioner asserts that depreciation, which was deducted in computing the PAL's, was neither allowed nor allowable because they were "disallowed". In support of this position, petitioner points to section 1.469-1T(f)(2)(ii), Temporary Income Tax Regs., 53 Fed. Reg. 5706 (Feb. 25, 1988), see supra p. 13, where the method for allocating deductions entering into the calculation of a PAL, is that "a ratable portion of each passive activity deduction * * * of the taxpayer from such activity is disallowed" (emphasis added). Petitioner insists that the phrase "is disallowed" means that the depreciation was neither allowed nor allowable. Noting that the loss to which the depreciation deduction contributed was a nondeductible PAL and therefore produced no tax benefit, petitioner concludes that the depreciation deduction cannot be considered "allowed" or "allowable" within the meaning of section 1016(a)(2).

We disagree. To a large degree, our reasons for so doing have been set forth in our analysis of the provisions of the regulations, upon which petitioner relies, in connection with petitioner's assertion that the deductions and not the PAL are the subject of the carryover. See supra p. 13.

We are reinforced in our reasoning by the legislative history of section 469, which states:  "The determination of whether a loss is suspended under the passive loss rule is made after the application of the at-risk rules and the interest deduction limitation, as well as other provisions relating to the measurement of taxable income."  S. Rept. 99-313, supra, 1986-3 C.B. (Vol. 3) at 723.  The "basis is reduced as under present law, even in the case where deductions are suspended under the passive loss rule."  Id. at 723 n.9.

In sum, the description of the deductions as being "disallowed" has no independent substantive significance but relates only to the manner of their treatment in the calculation of the PAL.

Nor are we persuaded by petitioner's argument that the restoration of depreciation is required by the "proper adjustment" of basis language in section 1016.  Whatever the impact of that language might be in the context of a disallowance of a deduction for depreciation which has a permanent effect, it has no bearing herein.  Our conclusion that the PAL's cannot be utilized in 1991 but remain available to potential future use supplies a critical difference from the situation that existed in Perkins v. Thomas, 86 F.2d 954 (5th Cir. 1936), affd. on another issue 301 U.S. 655 (1937), relied upon by petitioner.  The fact that the deduction for depreciation resulted in no tax benefit to St. Charles in 1991 is beside the point.  The PAL's, which were

increased by the deductions, remain available for potential future use, albeit that the conditions for such use may never occur.  In this respect, the PAL situation is strikingly similar to that which exists in the case of an NOL which is increased by a depreciation deduction but which may, but not necessarily, be used in a subsequent year.

In keeping with the foregoing, respondent's motion for partial summary judgment is granted, and petitioner's motion is denied.

<u>An appropriate order will</u>

<u>be issued</u>.