Robert L. PHINNEY and United States of America, Appellants,

v.

HOUSTON OIL FIELD MATERIAL COMPANY, Inc., and its Subsidiaries, Appellees.

No. 16622.

United States Court of Appeals Fifth Circuit.

Feb. 26, 1958.

Rehearing Denied April 1, 1958.

Charles K. Rice, Asst. Atty. Gen., Davis W. Morton, Jr., and Ellis N. Slack, Attys., Dept. of Justice, Washington, D. C., John E. Banks, Asst. U. S. Atty., San Antonio, Tex., I. Henry Kutz and Grant W. Wiprud, Attys., Dept. of Justice, Washington, D. C., Russell B. Wine, U. S. Atty., San Antonio, Tex., for appellants.

M. S. McCorquodale, C. W. Wellen, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., for appellees.

Before CAMERON, JONES and WISDOM, Circuit Judges.

JONES, Circuit Judge.

The Court is here concerned with Federal income tax liabilities of the appellees, Houston Oil Field Material Company, Inc., and its subsidiaries. The facts are not in dispute. The tax year involved is 1948. Houston Oil and its subsidiaries then existing had filed separate returns for 1947. One of the subsidiaries, Wayside Oil Company, began business on September 1, 1947. It had a loss of $18,994.79 for the fiscal year ending August 31, 1948. This loss was reflected in a separate tax return of Wayside for the fiscal year. During the period of September 1, 1948, to December 31, 1948, Wayside had income of $4,546.34. The affiliated group, including Wayside, filed a consolidated return on a calendar year basis for 1948. In this return Wayside's income was computed as zero by reason of the carrying forward of sufficient of its loss from the return for its fiscal year ending August 31, 1948, to offset its income for the September through December, 1948, period. Adjustments under 26 U.S.C.A. (I.R.C.1939) § 122(d) reduced the unapplied Wayside loss to $11,626.92. The amended consolidated return of the affiliated companies for the year 1948, as filed, showed net taxable income of $943,742.66.

On April 9, 1949, HOMCO Service, Inc., a subsidiary of Houston Oil Field Material Company, the parent corporation in the affiliated group, was incorporated. HOMCO had a loss for 1949 of $129,906.53. Wayside had income in 1949 of $33,572.05. The consolidated return of the group for 1949 showed a loss of $456,698.85, which included the 1949 Wayside income and the HOMCO loss, but did not carry forward any of the unapplied 1948 Wayside loss. Of the reported 1949 loss, 74.828% was attributable to Houston Oil Field Material and 3.85% was attributed to Briggs-Weaver Machinery Co., a subsidiary, and these amounts were carried back and offset against the net income of those corporations for 1947 as reflected in their separate returns. The remaining 21.32% of the loss, or $97,368.19, was reduced by depletion to $88,991.39. This portion of the 1949 consolidated loss was attributable to Arizona Barite Company, another subsidiary of Houston Oil Field Material, and to HOMCO. Neither of these subsidiaries had any 1947 income against which any portion of the 1949 loss could be offset.

In March of 1953 the affiliated group filed a claim for refund. In it the contention was made that the 1949 consolidated loss should be increased from the $456,698.85 to $468,325.77. Such increase was to result from the application of Wayside's unapplied remainder of its 1948 fiscal year loss of $11,626.92 against Wayside's 1949 income as a loss carryover. The increase in the consolidated loss for 1949, so computed, was to be carried back, under the taxpayers' theory, in the same manner as the consolidated loss as originally computed. The claim for refund also asserted the right to carry-back against 1948 consolidated income the portion of the 1949 consolidated loss attributable to HOMCO and Arizona Barite. These proposed increases would be $88,991.39 plus 21.32% of $11,626.92 or $2,478.86. The Commissioner allowed the claim for refund based on the carry-back of the $88,991.39 loss. The refund so based was in the amount of $35,596.56, of which $34,583.13 was attributable to the HOMCO portion of the loss carry-back. The Commissioner denied the claim for refund to the extent it depended upon the carrying forward into 1949 of Wayside's fiscal year loss. The amount of the refund as allowed, which included items not here in controversy, was paid on or about September 1, 1954.

In November of 1955, Houston Oil Field Material and its subsidiaries brought several suits against Robert L. Phinney, the District Director of Internal Revenue for the Austin, Texas, District, on claims involving disputes as to whether certain earnings were capital

gains or ordinary income. Each suit was for an alleged overpayment in a particular year. One of the suits was with respect to the tax for 1948. All of the suits raised the same issue. This issue was determined and is not in the case as it comes before us. The United States intervened in the suit for a refund for 1948, asserting that the refund which had been paid in 1954 was erroneous in so far as it was based upon the HOMCO carry-back into the 1948 tax determination, and prayed for judgment in the amount of the refund made by the Commissioner in 1954. The corporations of the affiliated group answered, and by way of set-off and counterclaim asserted the right to carry the unapplied $11,626.92 of Wayside's fiscal year loss forward into the 1949 computation and to carry back the resulting increase of the consolidated loss for that year, and seeking judgment for the resulting reduction in taxes stated as $4,297.61. The issue on the original claims was submitted to the jury for a special finding and a verdict was returned, upon which judgment was entered, for the taxpayers. The claim of the Government, set up in its petition for intervention, was decided adversely to it. The district court decided for the taxpayers on their counterclaim and entered judgment against the United States for $4,297.61 and interest. The United States has appealed on both issues. The verdict of the jury on the issue submitted to it was returned January 31, 1956. On February 1, 1956, the defendant Phinney filed a motion for judgment non obstante veredicto and for a new trial. This motion related only to the matter submitted to the jury. On August 2, 1956, the court's judgment on all of the issues was entered. The court's order overruling the motion was entered on October 1, 1956. On November 24, 1956, the United States filed notice of appeal. The notice stated that the United States appealed from the judgment and from the order overruling the motion for judgment non obstante and new trial. Both Phinney and the United States were represented by the

United States Attorney for the Western District of Texas. The notice of appeal was filed more than sixty days after the judgment was entered but within sixty days after Phinney's motion was overruled. The taxpayer group has moved to dismiss the appeal and insists that the time commenced with the judgment. The Government resists the motion and urges that the date of the order overruling the motion fixes the beginning of the period. Our consideration will first be directed to the motion.

Under Rule 54 and Rule 73(a), Fed.Rules Civ.Proc. 28 U.S.C.A., a motion timely made for a judgment n.o.v. or in the alternative for a new trial suspends the finality of a judgment adverse to the movant for the purpose of an appeal until a ruling is made upon the motion. 5 Moore's Federal Practice, p. 2332, Par. 50.10, 6 Moore's Federal Practice, p. 121, Par. 54.12 [2]. See Wilson v. Southern Railway Co., 5 Cir., 1945, 147 F.2d 165. The rule is applicable where the motion was made before but not overruled until after the entry of the judgment. Partridge v. Presley, 1951, 88 U.S.App.D.C. 298, 189 F.2d 645, certiorari denied 342 U.S. 850, 72 S.Ct. 79, 96 L.Ed. 642. Phinney's motion was timely made so that the time within which he could have appealed did not commence to run until his motion was denied on October 1, 1956. But Phinney, although having the right to do so, did not take an appeal. Was the finality of the judgment as to the United States suspended by the pendency of the motion so that the time within which it might appeal did not commence to run until the order on the motion was entered?

Rule 54(b), Fed.Rules Civ.Proc., 28 U.S.C.A., as revised by an amendment which became effective on March 19, 1948, provides:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon

an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however, designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims."

Prior to the Federal Rules and under the original Rule 54(b) difficulties frequently arose in determining whether a particular order, judgment or decree was final. McGourkey v. Toledo & Ohio Central R. Co., 146 U.S. 536, 13 S.Ct. 170, 36 L.Ed. 1079; Dickinson v. Petroleum Conversion Corporation, 338 U.S. 507, 70 S.Ct. 322, 94 L.Ed. 299. See 49 Michigan Law Rev. 442. The Courts of Appeal can review only final judgments. 28 U.S.C.A. § 1291. Such is the rule at common law and it is frequently recognized in state statutes. 2 Am.Jur. 858, Appeal and Error § 21. In commenting on this policy of limiting appellate review to final decisions, the Supreme Court has said, "The foundation of this policy is not in merely technical conceptions of 'finality.' It is one against piecemeal litigation. * * * Reasons other than conservation of judicial energy sustain the limitation. One is elimination of delays caused by interlocutory appeals." Catlin v. United States, 324 U.S. 229, 65 S.Ct. 631, 634, 89 L.Ed. 911.

In the Notes of the Advisory Committee on the Amendments to the Rules the policy of generally limiting appeals to final judgments was the subject of comment. The confusion existing under and the problems arising under the prior rule were recognized by the Committee. The Committee noted the historic doctrine had been qualified by the original Rule 54(b) which permitted a judgment terminating the action with respect to a particular claim with the action proceeding as to other claims and critically observed that the result hoped for had not been fully accomplished by the former rule. The Committee concluded that the retention of the former rule prohibiting piecemeal disposition of litigation was desirable except upon an express determination that there is no reason for delay. Rule 54, Fed.Rules Civ. Proc., 28 U.S.C.A. Notes of Advisory Committee on Amendments to Rules. See Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297; Cold Metal Process Co. v. Union Engineering & Foundry Co., 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311.

Here the judgment was not final in that it was appealable, in so far as Phinney was concerned, until his motion was denied. In the overall case, the issues between Phinney and the appellee-movants were not adjudicated with finality. Similar in factual phases to the case before us is Continental Casualty Co. v. United States, 9 Cir., 1948, 167 F.2d 107, certiorari denied 337 U.S. 940, 69 S.Ct. 1517, 93 L.Ed. 1745, rehearing denied 338 U.S. 840, 70 S.Ct. 35, 94 L.Ed. 514. There a motion for a new trial was made by some of the parties but not by three of the defendants named Macri. The Macris attempted to take an appeal more than three months after the entry of the judgment but within three months after the denial of the motions for new trial in which they did not join. The court dismissed the Macri appeal saying:

"As to the judgments against the three Macris on their cross-complaints it is apparent their appeal must be dismissed. They made no motion for a new trial as to these judgments, and that of Goerig and Philp was of adversary parties and could not be construed as on behalf of the Macris." 167 F.2d 107, 108.

The opinion from which we have just quoted recognizes the rule that a pending motion may toll the running of time for taking an appeal. It holds, too, that the time will run as to a party who has made

no motion but will be terminated as to a party who has made a motion. The Continental Casualty case arose before the 1948 amendments to the Rules became effective. In that case the Macris took an appeal which was in time as to one phase of the case and too late as to others. Such result, permitting if not requiring piecemeal appeals, illustrates the condition that the 1948 amendment was intended to relieve. We conclude that the motion to dismiss the appeal should be denied. Cf. McDonald v. Pennsylvania Railroad Co., 3 Cir., 1954, 210 F.2d 524.

In addition to the Continental Casualty Company case, supra, the movants cite two other cases to support their contention that the appeal was filed too late. Of these, Fine v. Paramount Pictures, Inc., 7 Cir., 1950, 181 F.2d 300, held that the filing of a motion for new trial which was not timely filed but was considered by the court and overruled, did not enlarge the time for taking an appeal. In Raughley v. Pennsylvania Railroad Co., 3 Cir., 1956, 230 F.2d 387, it was held that a petition for reargument was not of the character of the motions which, when timely made, terminate the running of time for appeal under Rule 73 (a). Neither of these cases is applicable to the case here. Other grounds are urged to support the motion for dismissing the appeal. They have been carefully considered and we do not find merit in them. Similar situations being unlikely, we forego a discussion of them.

On the merits two questions are presented: first, whether the 1949 loss of HOMCO, which did not exist in 1948, could be reflected in the 1949 consolidated net operating loss for the purpose of the carry-back as an offset to the 1948 consolidated net income; and second, whether the unapplied Wayside loss for its separate return fiscal year can be carried over to 1949 as an offset against Wayside's income for that year and so increase the consolidated net loss for 1949 to be carried back into recomputations of the 1948 consolidated net income and of the parent corporation's 1947

separate income. Both questions were decided for the taxpayers by the District Court.

The Revenue Act gives to an affiliated group of corporations the privilege of making consolidated returns. The consolidated return of a group which includes a corporation which was a member of the group for only a part of the tax year shall include that corporation's income only for the period it was an affiliate. The Secretary is directed to prescribe regulations so that the tax liability of the group and each member may be determined and collected in such manner as to prevent tax avoidance. 26 U.S.C.A. (I.R.C.1939) § 141.

The Revenue Act provides that the making of a consolidated return shall be upon the condition that each member of the group consent to the Commissioner's regulations relating to such returns, 26 U.S.C.A. (I.R.C.1939) § 141(a). Charles Ilfeld Co. v. Hernandez, 292 U.S. 62, 54 S.Ct. 596, 78 L.Ed. 1127; Hughes Tool Co. v. Commissioner, 5 Cir., 1941, 118 F. 2d 472. We see no invalidity of the regulations which have been adopted. They are within the congressional grant of authority and do not conflict with the statute.

The Supreme Court, in a recent opinion, has discussed the purpose of § 122 of the 1939 Revenue Act. In the opinion it is said:

"Those provisions were enacted to ameliorate the unduly drastic consequences of taxing income strictly on an annual basis. They were designed to permit a taxpayer to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year. There is, however, no indication in their legislative history that these provisions were designed to permit the averaging of the pre-merger losses of one business with the post-merger income of some other business which had been operated and taxed separately before the merger." Lisbon Shops v. Koehler, 353 U.S.

382, 77 S.Ct. 990, 993, 1 L.Ed.2d 924.

The purposes as stated in the foregoing quotation are equally applicable to pre-affiliation losses where a consolidated return is filed as to pre-merger losses where separate corporations have merged.

The attempt to carry forward Wayside's unapplied pre-affiliation net operating loss and apply it against that corporation's 1949 income as computed for purposes of determining the group's consolidated net loss for that year is contrary to the pertinent Regulations, which state that the net income of an affiliate for consolidated returns purposes shall be computed without benefit of a net operating loss deduction. Treas.Reg. 104, § 23.31(d)(1)(ii). The reason for this provision is cogently stated by Mertens, in a passage dealing with a similar provision of a regulation governing other years, as being "for the elimination, in the computation of the [net] income of each corporation separately, of the items which are to be computed on a consolidated basis". 8 Mertens, Law of Federal Income Taxation (1957) 115, § 46.41. The Wayside net operating loss carry-over would enter into the computation of the 1949 consolidated net operating loss deduction if such a deduction were to be computed. See Treas.Reg. 104, §§ 23.31(b)(2)(ii), 23.31(b)(2)(iii) and 23.31(d)(3). However, since the group showed a net operating loss for 1949, obviously no consolidated net operating loss deduction could be or has been computed for that year, with the result that the unapplied Wayside pre-affiliation net operating loss does not enter into any 1949 computation.

The 1948 consolidated net operating loss deduction equals the aggregate of the consolidated net operating loss carry-overs and carry-backs. Treas.Reg. 104, § 23.31(b)(2)(ii). As part of the carry-overs, the pre-affiliation net operating loss carry-over of a corporation which is an affiliate in the taxable year is included, but only in an amount not exceeding that corporation's net income within the group for the taxable year. Treas. Reg. 104, §§ 23.31(b)(2)(iii) and 23.31 (d)(3); see N.Y.U. 8th Annual Institute on Federal Taxation (1950), p. 22. Thus the group could and did carry over into the consolidated net operating loss deduction for 1948 a portion of Wayside's pre-affiliation loss equal to that affiliate's post-affiliation 1948 net income. The propriety of so doing is not questioned.

The amount of the consolidated net operating loss for 1949 which could be used in computing the consolidated net operating loss deduction for 1948 is computed under Treas.Reg. 104, § 23.31(b) (2)(v). It equals (subject to adjustments with which we are not here concerned) the amount by which the combined net operating losses of the affiliates which had such losses in 1949 exceed the combined net income of the affiliates having net income in 1949. See Montgomery's Federal Taxes on Corporations 1944–1945, Vol. II, pp. 686–687. The income (or loss) of the affiliates is computed as previously mentioned (without a net operating loss deduction, inter alia), and is adjusted in accordance with 26 U.S.C.A. (I.R.C.1939) § 122(d), to minimize the usable loss.

■ It is clear from the above that the unapplied portion of Wayside's pre-affiliation net operating loss can no more be used in the computation of the 1949 consolidated net operating loss carry-back than it can be used in the computation of 1949 consolidated loss. Since the Wayside pre-affiliation carry-over cannot be used in computing the 1949 consolidated net operating loss for any purpose, including carry-backs, it follows that it cannot serve to augment either the 1948 consolidated net operating loss deduction or the parent corporation's separate 1947 net operating loss deduction. As to the latter, see Treas.Reg. 104, § 23.31(f).

The court below erred in not finding for the government with respect to the Wayside unapplied pre-affiliation net operating loss.

■ HOMCO was not in existence in 1948, and so could not have been a tax-

payer in that year. The portion of the consolidated loss attributable to HOMCO could not properly be carried back and offset against the consolidated income of the affiliated group for 1948.

For the entry of a judgment in accordance with this opinion, the judgment of the District Court is

Reversed and remanded.