MIDLAND MANAGEMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86342. Filed May 7, 1962.

---

*Murray Steinberg, Esq.*, for the petitioner.
*James H. Martin, Esq.*, for the respondent.

WITHEY, *Judge:* Respondent has determined a deficiency in the income tax of petitioner for its taxable year ended September 30, 1955, in the amount of $12,590.80.

The issue presented is whether the respondent has erred in disallowing the loss carryback of an affiliated group of corporations from the taxable year ended September 30, 1957, to the taxable year ended September 30, 1955, when certain corporations which sustained the losses in 1957 were not members of the affiliated group and not in existence during 1955. Because of our decision of this issue, we do not reach two additional issues raised by the pleadings.

FINDINGS OF FACT.

The facts which have been stipulated are found accordingly.

Petitioner, Midland Management Company, hereinafter referred to as Midland, was incorporated under the laws of Delaware on January 4, 1950. Its principal place of business is in St. Louis, Missouri.

For the taxable year ended September 30, 1955, petitioner, as the common parent corporation, and the following affiliated corporations filed a consolidated Federal corporation income tax return with the district director of internal revenue at St. Louis, Missouri:

| | Name | Date of incorporation | State in which incorporated |
|---|---|---|---|
| 1 | Midland Finance Company (Ga.) | Dec. 16, 1949 | Georgia. |
| 2 | Midland Finance Company (N.C.) | June 23, 1950 | North Carolina. |
| 3 | Midland Finance Company (Fla.) | Feb. 19, 1951 | Florida. |
| 4 | Midland Finance Company (W. Va.) | May 21, 1951 | West Virginia. |
| 5 | Midland Finance Company, Inc. (Ky.) | Sept. 4, 1951 | Kentucky. |
| 6 | General Insurance Agency, Inc. | Feb. 11, 1952 | Delaware. |
| 7 | Midland Finance Company (Md.) | Mar. 6, 1952 | Maryland. |
| 8 | Midland Finance Company of Morgantown | Apr. 8, 1953 | West Virginia. |
| 9 | Midland Finance Company of Charleston | Apr. 8, 1953 | West Virginia. |
| 10 | Richards Insurance Agency, Inc. | Dec. 28, 1953 | Delaware. |
| 11 | Midland Finance Company of Raleigh, Inc. | Mar. 8, 1954 | North Carolina. |
| 12 | Local Loan Company of Raleigh, Inc. | Mar. 15, 1954 | North Carolina. |
| 13 | Midland Finance Company of Wheeling | May 24, 1954 | West Virginia. |
| 14 | Local Loan Company of Greensboro, Inc. | July 26, 1954 | North Carolina. |

This return disclosed taxable income for the affiliated group of $109,091.94 and income tax due in the amount of $53,227.54.

Petitioner, as the common parent corporation, together with the following affiliated corporations, filed with the district director of internal revenue at St. Louis, Missouri, a consolidated Federal corporation income tax return for the taxable year ended September 30, 1957, which reflected income or loss as follows:

| Name | Date of in-corporation | State in which in-corporated | Income (or loss) |
|---|---|---|---|
| *Common parent* | | | |
| Midland Management Company | | | $35,573.13 |
| *Affiliated corporations* | | | |
| 1 Midland Finance Company (Ga.) | Dec. 16, 1949 | Georgia | (15,319.07) |
| 2 Midland Finance Company (N.C.) | June 23, 1950 | North Carolina | (13,833.23) |
| 3 Midland Finance Company (Fla.) | Feb. 19, 1951 | Florida | 29,016.48 |
| 4 General Insurance Agency, Inc. | Feb. 11, 1952 | Delaware | 23,040.46 |
| 5 Richards Insurance Agency, Inc. | Dec. 28, 1953 | Delaware | 11,941.93 |
| 6 Midland Finance Company of Raleigh, Inc. | Mar. 8, 1954 | North Carolina | (14,395.72) |
| 7 Midland Finance Company of Lake Charles, Louisiana, Inc. | May 7, 1956 | Louisiana | (18,447.10) |
| 8 Midland Finance Company of New Orleans, Louisiana, Inc. | May 7, 1956 | Louisiana | (19,407.03) |
| 9 Midland Finance Company of Louisville | May 18, 1956 | Kentucky | (26,207.49) |
| 10 Midland Discount Company of Lake Charles, Inc. | Jan. 31, 1957 | Louisiana | (7,323.49) |
| 11 Midland Discount Company of New Orleans, Inc. | Jan. 31, 1957 | Louisiana | (5,888.93) |
| 12 Midland Finance Company of Spring Hill | June 27, 1957 | West Virginia | (4,384.37) |

In addition, petitioner and its affiliated corporations filed an amended consolidated Federal corporation income tax return for the taxable year ended September 30, 1957, with the district director of internal revenue at St. Louis, Missouri. Those corporations comprising the affiliated group of 1957 which were not included in the consolidated return for 1955 were not in existence during 1955.

The consolidated return filed by Midland and its affiliated group for the year 1957 reflected a consolidated loss of $25,634.43. The corporations which had been members of the affiliated group during the year 1955 had a combined net income during the year 1957 of $56,023.98 and the corporations which had not been members of the affiliated group during the year 1955 had a combined loss during the year 1957 of $81,658.41.

Midland and its affiliated corporations were engaged during the years 1955 and 1957 in the business of automobile financing, personal loans, operation of insurance agencies, and management services.

OPINION.

Petitioner, in its consolidated return, has sought to carry back from 1957 to 1955 losses of itself and 12 affiliated corporations to offset the taxable income of itself and only 6 of the 12 for 1955, the year at issue. In doing so, it takes the position that *Phinney* v. *Houston Oil Field Material Company*, 252 F. 2d 357 (C.A. 5), reversing an unreported decision of the District Court for the Western District of Texas, has been wrongly decided and should be disregarded here. Petitioner concedes that under that decision the loss it seeks to carry back cannot be so carried back insofar as it is attributable to the corporations included in the 1957 affiliated group which were concededly not in existence in 1955. Petitioner has not cited or discussed on brief *Swift & Co.* v. *United States*, 38 F. 2d 365 (Ct. Cl.), which, together with *Phinney* v. *Houston Oil Field Material Company*, *supra*, are the two

reported cases where the exact issue as that before us has been decided. In each case decision was against the taxpayer and we think rightly so.

The Revenue Act of 1918 contained the first statutory provisions authorizing the filing of consolidated returns for affiliated taxpayers. The words of the Senate Finance Committee in its report to the Senate with respect to proposed consolidated return provisions therein are as applicable to the purpose of such provisions contained in the 1954 Code and to the regulations of respondent promulgated thereunder.

While the committee is convinced that the consolidated return tends to conserve, not to reduce, the revenue, the committee recommends its adoption not primarily because it operates to prevent evasion of taxes or because of its effect upon the revenue, but because the principle *of taxing as a business unit what in reality is a business unit* is sound and equitable and convenient both to the taxpayer and to the Government. [Emphasis added. S. Rept. No. 617, 65th Cong., 3d Sess., p. 9 (1918), 1939–1 C.B. (Part 2) 123.]

Although for the purpose of identification of the "affiliated group" the regulations provide that the criterion is the identity of the parent so long as the parent is affiliated with as few as one other corporation, section 1.1502–11 (c) and (d), Income Tax Regs., this does not alter the fact that the "affiliated group" which filed a consolidated return showing a consolidated loss in 1957 is not the same "business unit" which filed a consolidated return in 1955, the year at issue, showing a consolidated gain against which the 1957 loss is sought to be offset. Even though each or any of the six corporations included in the 1957 (the loss year) consolidated return had been in existence in 1955 (the gain year) and they had in fact been members of a "business unit," their losses would not necessarily be subject to carryback to 1955 for under section 1.1502–31(d)(1), Income Tax Regs., it is required in order for a business loss to be so carried back, that no separate return be filed for the earlier year by a member of the unit and that it be part of the affiliated group during that year. *Trinco Industries, Inc.*, 22 T.C. 959. Although the Commissioner's regulations do not specifically answer the issue before us, we think the last-cited regulations furnish a guide to the solution thereof. Certainly a corporation filing a separate return in the gain year while a part of a "business unit" is in closer conformity with congressional intent than a corporation which is nonexistent such as six of those in this case; yet a carryback from its loss year to its gain year is expressly prohibited by regulation. We are not convinced that sections 1501 and 1502 of the Internal Revenue Code of 1954 or the regulations promulgated thereunder provide that the business failure of a newly affiliated corporation may be carried back beyond its first year of operation and absorbed by the prior business successes of defunct corporations.

It is true that for a given tax year the losses and gains of a "business unit" which constitutes an "affiliated group" may be consolidated and set off one against the other and that in that sense an affiliated group is a taxable entity, but it is now and has been since the advent of the provisions for consolidated returns equally true that the taxable income or loss of each member of the group must, before consolidation, be computed upon the basis of its own affairs and in that sense each member remains a single taxpaying entity. *American Trans-Ocean N. Corp.* v. *Commissioner*, 229 F. 2d 97 (C.A. 2), affirming a Memorandum Opinion of this Court; *Seaboard Commercial Corporation*, 28 T.C. 1034; *Trinco Industries, Inc.*, *supra;* cf. *Frelbro Corporation*, 36 T.C. 864. It is fundamental that business losses may be offset, under section 172 of the 1954 Code and its predecessor, only against the gains of the taxpayer who suffered such loss. *New Colonial Co.* v. *Helvering*, 292 U.S. 435, affirming 66 F. 2d 480 (C.A. 2), affirming 24 B.T.A. 886. To permit the carryback of the losses of the "new" corporations as an offset against the gains of now nonexistent corporations is to do direct violence to this fundamental principle. We therefore hold for respondent on this issue.

Having so decided the primary issue it is unnecessary to decide whether a member of the affiliated group received ordinary income or capital gain from the sale of its notes receivable in 1957 as that year is not before us except for carryback purposes.

For the same reason we do not reach the issue whether certain attorney fees paid by petitioner in 1957 were or were not properly deductible as ordinary and necessary business expense.

*Decision will be entered for the respondent.*