[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13869

Non-Argument Calendar

_____

PLEADRO J. SCOTT,

Plaintiff-Appellant,

*versus*

MIAMI DADE COUNTY,
R. GOMEZ, et al,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:13-cv-23013-DPG

_____

Before LAGOA, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Pleadro Scott, proceeding *pro se* on appeal, appeals a jury verdict in favor of the appellees in his 42 U.S.C. § 1983 civil rights action.  On appeal, Scott argues that: (1) the district court abused its discretion in denying his motion for a new trial because the evidence was insufficient to support the jury's verdict; (2) defense counsel made improper comments during *voir dire*; (3) the district court abused its discretion on certain evidentiary rulings; (4) the jury instructions failed to adequately and fairly present the legal issues to the jury; (5) the district court erred in dismissing Sergeant Harold Jefferson as a defendant; (6) the district court erred in dismissing Officer Jane Doe as a defendant; (7) the district court erred in dismissing Miami-Dade County as a defendant; and (8) the district court erred in granting Lieutenant Constantina Weston's and Corporal Rolando Gomez's motion for costs.[1]

We will address each point in turn.  We write only for the parties, so we assume their familiarity with the relevant facts.

**I.**

---

[1] Scott's motion to compel the creation of the record on appeal is DENIED AS MOOT.

"We review a ruling on a motion for a new trial for abuse of discretion." *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1255 (11th Cir. 2016) (citation omitted). "Deference to the district court is particularly appropriate where a new trial is denied and the jury's verdict is left undisturbed." *Id.* (citation and internal quotations omitted).

A party may move for a new trial under Federal Rule of Civil Procedure 59 on the grounds that the verdict was against the weight of the evidence, the damages were excessive, or the trial was otherwise unfair. *Id.* at 1254. The court is then free to weigh the evidence and may, in its discretion, grant a new trial if it believes that the verdict is against the clear weight of the evidence. *Id.* However, "[b]ecause it is critical that a judge does not merely substitute his judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (citation and internal quotations omitted).

Notably, it is the jury's role to weigh conflicting evidence and determine the credibility of witnesses. *McGinnis*, 817 F.3d at 1254. As such, we afford substantial deference to the fact finder's explicit and implicit credibility determinations. *See CBS Broad., Inc. v. Echostar Commc'ns Corp.*, 450 F.3d 505, 517 n.23 (11th Cir. 2006) ("Appellate courts reviewing a cold record give particular deference to credibility determinations of a fact-finder who had the

opportunity to see live testimony." (citation and alteration omitted)); *see also United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012) ("[W]e afford substantial deference to the factfinder's credibility determinations, both explicit and *implicit*." (emphasis added)).

A plaintiff is entitled to redress under § 1983 if a person acting under color of state law deprived the plaintiff of any right, privilege, or immunity that the Constitution or laws of the United States protects. 42 U.S.C. § 1983. "The Eighth Amendment prohibits the federal government, and state governments through the Due Process Clause of the Fourteenth Amendment, from inflicting cruel and unusual punishments." *Cox v. Nobles*, 15 F.4th 1350, 1357 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 1178 (2022) (citation and internal quotations omitted). "The prohibition on cruel and unusual punishments requires prison officials to take reasonable measures to guarantee the safety of the inmates." *Id.* (citation and internal quotations omitted). "When a plaintiff invokes this principle in a lawsuit against prison officials, we often refer to the plaintiff's claims as 'failure-to-protect' claims." *Id.*

To succeed on a failure-to-protect claim, a plaintiff must satisfy the following three elements: (1) he "was incarcerated under conditions posing a substantial risk of serious harm"; (2) "the prison official had a sufficiently culpable state of mind, amounting to deliberate indifference"; and (3) the constitutional violation caused his injuries. *Id.* at 1357-58 (brackets and internal quotations omitted). We use an objective standard to examine the first element—

a substantial risk of harm—and the plaintiff must "show conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (internal quotations omitted). "The second element—whether the defendant was deliberately indifferent to that risk—has both a subjective and an objective component." *Id.*

> Subjectively, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and also draw the inference. Objectively, the official must have responded to the known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act.

*Id.* (internal quotations and ellipsis omitted). "Finally, the plaintiff must show a 'necessary causal link' between the officer's failure to act reasonably and the plaintiff's injury." *Id.*

We have recognized that an excessive risk of inmate-on-inmate violence can constitute a substantial risk of serious harm, but a plaintiff must show more than an occasional or isolated attack. *Purcell ex rel. Est. of Morgan v. Toombs Cty., Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005); *accord Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1101 (11th Cir. 2014) ("We stress that [a] plaintiff . . . must show more than 'a generalized awareness of risk'"). In fact, "the plaintiff must show that serious inmate-on-inmate violence was the norm or something close to it." *Marbury*, 936 F.3d at 1234 (internal quotations omitted). Sworn allegations of a

generalized risk, by themselves, do "not support the conclusion that serious inmate-on-inmate violence was so pervasive that it constitutes a substantial risk of serious harm to which defendants were deliberately indifferent." *Id.*

Qualified immunity is an affirmative defense that shields government officials from civil liability in their individual capacities when the government official acted within the scope of his discretionary authority and the official's conduct did not violate clearly established statutory or constitutional rights. *Kesinger v. Herrington*, 381 F.3d 1243, 1247-48 (11th. Cir. 2004). Once the government official shows that he acted within the scope of his discretionary authority, the plaintiff must attempt to overcome the qualified immunity defense by showing that: (1) the defendant violated a constitutional right, and (2) the violation of the right was clearly established. *Id.* at 1248.

Here, the jury's verdict was not against the great weight of the evidence. The jury could have credited the Defendants' testimony that Scott did not communicate a threat that would have put them on notice of more than a generalized risk of harm, which was a determination well within the jury's purview. Even assuming, arguendo, that the jury believed that Scott had communicated that he was receiving threats from gangs, the jury could have concluded that Scott did not communicate more than a generalized risk, which, contrary to Scott's argument, is insufficient to show a substantial risk of serious harm to which the Defendants were

deliberately indifferent.   Therefore, the district court did not abuse its discretion in denying Scott's motion for a new trial.

## II.

In the criminal context, we review decisions regarding *voir dire* for an abuse of discretion and will "reverse only if the questioning as a whole did not comply with the essential demands of fairness and did not give reasonable assurance to parties that any prejudice of potential jurors would be discovered." *United States v. Daniels*, 986 F.2d 451, 454 (11th Cir. 1993) (citation and internal quotations omitted).   "When no objections are raised to the allegedly improper comments, however, we review for plain error, but a finding of plain error is seldom justified in reviewing argument of counsel in a civil case." *Ruiz v. Wing*, 991 F.3d 1130, 1141 (11th Cir. 2021) (citations and internal quotations omitted).   "[P]lain error requires a showing that (1) an error occurred; (2) the error was plain; (3) it affected substantial rights; and (4) not correcting the error would seriously affect the fairness of the judicial proceeding." *Id.* (internal quotations omitted).

"The purpose of a voir dire is to ascertain whether a potential juror can render a verdict solely on the basis of the evidence presented and the charge of the trial court." *Wilcox v. Ford*, 813 F.2d 1140, 1150 (11th Cir. 1987).   Notably, "a trial judge is accorded wide discretion in ascertaining what questions can and cannot be asked on voir dire." *Id.*

Here, defense counsel's comments during *voir dire* were not improper because they were to ascertain whether the potential jurors could render a verdict on Scott's failure-to-protect claim. To succeed on his failure to protect claim, Scott was required show that each individual defendant had a sufficiently culpable state of mind. *See Cox*, 15 F.4th at 1358. Thus, defense counsel's questioning was to determine whether the potential jurors could render a verdict on Scott's failure to protect claim by ensuring that they would not erroneously find the Defendants liable for another individual's conduct, and the district court had wide discretion to allow it. *See Wilcox*, 813 F.2d at 1150. Further, this Court has indicated, in the habeas context, that eliciting a promise from potential jurors is not improper. *See Horton v. Zant*, 941 F.2d 1449, 1465 66 (11th Cir. 1991) ("To the extent that [t]he [petitioner] is alleging that the jury gave the victim's occupation undue weight, this problem was mitigated by an extensive voir dire in which [he] elicited a promise from each juror not to consider the victim's occupation and by [his] closing argument in which he reminded the jurors of their promises."). Consequently, the district court was not required to give a curative instruction.

### III.

We review a district court's evidentiary rulings for an abuse of discretion. *Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1349 n.7 (11th Cir. 2007). "To gain a reversal based on a district court's evidentiary ruling, a party must establish that (1) its claim was adequately preserved; (2) the district court abused its discretion in interpreting or applying an evidentiary rule; and (3) this error

affected 'a substantial right.'" *Id.* at 1349 (internal quotations omitted). "In applying this standard, we will affirm a district court's evidentiary ruling unless the district court has made a clear error of judgment or has applied an incorrect legal standard" *Conroy v. Abraham Chevrolet-Tampa, Inc.*, 375 F.3d 1228, 1232 (11th Cir. 2004) (internal quotations omitted).

"A party introducing evidence generally cannot complain on appeal that the evidence was erroneously admitted." *Ruiz*, 991 F.3d at 1140 (citation and internal quotations omitted) (concluding that the plaintiff "waived his objection to the admissibility of [a] . . . [v]ideo by preemptively agreeing to play the video at the outset of the trial as a joint exhibit and referring to the video throughout trial"). Additionally, arguments raised for the first time on appeal that were not presented in the district court are deemed waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330-31 (11th Cir. 2004). Similarly, "an appellant[] simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal." *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009).

To properly authenticate a piece of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). For example, testimony from a witness with knowledge that an item is what it is claimed to be satisfies this requirement. Fed. R. Evid. 901(b)(1). Further, evidence may be authenticated by

its "appearance, contents, substance, internal patterns, or other distinctive characteristics . . . taken together with all the circumstances." Fed. R. Evid. 901(b)(4).

Under Fed. R. Evid. 1002, "[a]n original writing, recording, or photograph is required in order to prove its content unless the[] [Federal] [R]ules [of Evidence] or a federal statute provides otherwise." Fed. R. Evid. 1002. We have noted that Rule 1002 essentially restates "the so-called 'best evidence' rule." *Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1543 (11th Cir. 1994). Notably, "Rule 1002 requires production of an original document only when the proponent of the evidence seeks to prove the content of the writing." *Id.* "It does not, however, require production of a document simply because the document contains facts that are also testified to by a witness." *Id.* (internal quotations omitted).

Hearsay is an out-of-court statement offered into evidence "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Generally, hearsay is not admissible. Fed. R. Evid. 802. However, the Federal Rules of Evidence also contain several exceptions to the hearsay rule. *See* Fed. R. Evid. 803-804.

As relevant here, public records are not subject to the rule against hearsay. Fed. R. Evid. 803(8). A document falls under the "public records" exception to the rule against hearsay if it is "[a] record or statement of a public office," which includes records that set out "the office's activities" or "a matter observed while under a legal duty to report, but not including, in a criminal case, a matter

observed            by            law-enforcement            personnel."
Fed. R. Evid. 803(8)(A)(i)-(ii).  However, "[h]earsay within hearsay
subject to an exception is not admissible."  *United Techs. Corp. v.*
*Mazer*, 556 F.3d 1260, 1278 (11th Cir. 2009) (citation omitted).
Thus, "[i]t is well established that entries in a police report which
result from the officer's own observations and knowledge may be
admitted but that statements made by third persons under no busi-
ness duty to report may not."  *Id.* (citation omitted).  "In other
words, placing otherwise inadmissible hearsay statements by
third-parties into a government report does not make the state-
ments admissible."  *Id.* (brackets and internal quotations omitted).
Rather, for hearsay within hearsay to be admissible, "each part of
the combined statements [must] conform[] with an exception to
the [hearsay] rule."  Fed. R. Evid. 805.

Additionally, if the declarant is unavailable, the rule against
hearsay does not exclude a statement against interest, which is a
statement, in relevant part, that:

> a reasonable person in the declarant's position would
> have made only if the person believed it to be true
> because, when made, it was so contrary to the declar-
> ant's proprietary or pecuniary interest or had so great
> a tendency to invalidate the declarant's claim against
> someone else or to expose the declarant to civil or
> criminal liability[.]

Fed. R. Evid. 804(b)(3).    Notably, "the statements at issue
must . . . be against the interest of the *declarant* . . . in order to fall

within the exception's terms." *Goodman v. Kimbrough*, 718 F.3d 1325, 1333 n.2 (11th Cir. 2013) (emphasis in original).

Here, the district court did not abuse its discretion in its evidentiary rulings. First, Scott waived his challenges to the admissibility of the safety cell profile sheet by preemptively agreeing to present it at trial as a joint exhibit. Similarly, he did not raise his Rule 1002 argument before the district court and, as such, he has waived that argument. *See Access Now*, 385 F.3d at 1330 31. Second, the district court properly excluded Scott's May 20, 2013, grievance because it contained double hearsay: Sergeant Johnson's statement regarding Scott's keep separate status, which Lieutenant Gayle included in the grievance. Thus, even if the grievance were generally admissible as a public record, Sergeant Johnson's statement was inadmissible unless it also fell under an exception to the hearsay rule. *See United Techs. Corp.*, 556 F.3d at 1278; Fed. R. Evid. 803(8), 805. Although Scott argues that the entire grievance was admissible as a public record, placing Sergeant Johnson's inadmissible hearsay statement into the report does not make the statement admissible, and Scott does not explain how Sergeant Johnson's statements were excluded from the rule against hearsay. *Id.* Third, Scott does not discuss or identify any of the discovery responses that were allegedly erroneously excluded, and, therefore, he has abandoned the issue. Fourth, the district court properly excluded Officer Jane Doe's statements because they were hearsay. Although Scott argues that Officer Jane Doe's statements fell under the hearsay exception for statements against interest, her statements would not expose her to civil, much less criminal, liability. *See* Fed. R. Evid.

804(b)(3).  Rather, Officer Jane Doe's alleged statement—that the jail card did not contain a keep separate notation—was, at most, against the Defendants' interests, not her own.  *See Goodman*, 718 F.3d at 1333 n.2.  Specifically, Officer Jane Doe's statements could have exposed the Defendants to civil liability by showing that they failed to act in response to Scott's fears of being attacked, and, therefore, they were deliberately indifferent to a risk of harm to Scott.  *See Marbury*, 936 F.3d at 1233.  But the statement was not a statement against interest of Jane Doe, and thus the district court did not abuse its discretion.

## IV.

Generally, we apply "a deferential standard of review to a trial court's jury instructions."  *Bogle v. McClure*, 332 F.3d 1347, 1356 (11th Cir. 2003).  A party may assign as error a failure to give an instruction if that party properly requested it and also properly objected.  Fed. R. Civ. P. 51(d)(1)(B).  However, we "may consider a plain error in the instructions that has not been preserved . . . if the error affects substantial rights."  Fed. R. Civ. P. 51(d)(2).

We examine "claims pertaining to jury instructions to determine whether the jury charges, considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not misled."  *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1115 (11th Cir. 2006) (internal quotations omitted).  Thus, "[t]he district court should not give an instruction which deals with an issue that is not properly before the jury."  *Oxford Furniture Cos. v. Drexel Heritage Furnishings, Inc.*, 984 F.2d 1118, 1127

(11th Cir. 1993). "If jury instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed in the instruction." *Johnson*, 437 F.3d at 1115. We will reverse an erroneous instruction only if we are "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Id.* (citation and internal quotations omitted).

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* "The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Id.* (internal quotations omitted). "Alternatively, the causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (internal quotations omitted). "The standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (brackets and citation omitted).

Here, the district court did not err, plainly or otherwise, in failing to instruct the jury on supervisory liability under § 1983. Scott did not request a jury instruction on supervisory liability. Nor did he raise an objection to the instructions below which sufficiently covered Scott's theory of the case—his failure-to-protect claim. Moreover, neither Defendant Weston nor Defendant Gomez supervised Jane Doe, the officer who permitted Scott to be placed in the holding cell with Dean at the courthouse. Jane Doe was employed by Court Services Bureau, a completely separate unit from the detention center that employed Defendants. Additionally, Scott never raised a separate due process claim regarding the denial of outdoor recreation, and, therefore, the district court did not err by not giving the jury an instruction on such denial.

## V.

"We review *de novo* the district court's grant of a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). Further, "[i]n the case of a *pro se* action, . . . [we] should construe the complaint more liberally than it would formal pleadings drafted by lawyers." *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts to state a claim that is plausible on its face, which occurs "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, a plaintiff must allege facts that sufficiently connect the defendant with the alleged constitutional violation. *See Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (holding that dismissal of claims was appropriate where the plaintiff failed to allege facts associating certain defendants with a particular constitutional violation).

Here, Scott did not allege facts that would connect Sergeant Jefferson with the alleged constitutional violation or allow the district court to draw the inference that he was liable for the alleged misconduct. Contrary to Scott's argument—that advanced notice of the substantial risk of harm was not required—the subjective component of the deliberate indifference element required that Sergeant Jefferson "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." See *Marbury*, 936 F.3d at 1233. Further, although Scott argues that he alleged that Sergeant Jefferson failed to take any action in response to his safety concerns, he specifically alleged that Sergeant Jefferson told him that he would not encounter other inmates, and, as the district court noted, he did not make any other factual allegations that Jefferson knew that Scott was still being placed with other inmates and failed to respond. Accordingly, the district court did not abuse its discretion in dismissing Sergeant Jefferson as a defendant.

## VI.

We review a district court's dismissal under Fed. R. Civ. P. 4(m) for an abuse of discretion. *Rance v. Rocksolid Granit USA, Inc.*, 583 F.3d 1284, 1286 (11th Cir. 2009). Rule 4(m) provides that, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* "Good cause exists when some outside factor, such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." *Rance*, 583 F.3d at 1286 (internal quotations omitted).

Generally, "fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). However, a distinction exists between claims against fictitious defendants and claims against real defendants sued under fictitious names because, "for one reason or another, the plaintiff is unwilling or unable to use a party's real name." *Dean v. Barber*, 951 F.2d 1210, 1215-16 & n.6 (11th Cir. 1992). We also have suggested that, in the context of prisoner lawsuits, where plaintiffs encounter difficulties in identifying the precise defendants, an appropriate alternative to dismissal may be for the district court to order disclosure of the defendants' identities or to "permit the plaintiff to obtain their identity through discovery." *See Brown v. Sikes*, 212 F.3d 1205, 1209 n.4 (11th Cir. 2000) (citation omitted).

Accordingly, we have stated that a claim may be maintained against an unnamed defendant if the defendant is sufficiently identified, such that the name would "be, at the very worst, surplusage." *Dean*, 951 F.2d at 1215 n.6. The identification must be more specific than a person's title. *Richardson*, 598 F.3d at 738. The proposed defendant must actually exist, and the complaint must describe "the person to be sued so that the person could be identified for service." *Dean*, 951 F.2d at 1215 n.6. For example, naming a defendant with a unique title, such as "Chief Deputy of the Jefferson County Jail John Doe" and "Governor of Alabama," has been treated as sufficient. *Id.* at 1215-16 & n.6. In sum, "as long as the court-appointed agent can locate the prison-guard defendant with reasonable effort, prisoner-litigants who provide enough information to identify the prison-guard defendant have established good cause for Rule 4(m) purposes." *Richardson*, 598 F.3d at 740.

Here, Scott did not show good cause for his failure to identify and serve Officer Jane Doe. As an initial matter, Scott only identified Officer Jane Doe by her title, which was an insufficient description to allow him to maintain a claim against an unnamed defendant. *See Dean*, 951 F.2d at 1215 n.6; *Richardson*, 598 F.3d at 738. Additionally, before dismissing Officer Jane Doe, the district court gave Scott multiple opportunities to identify her, and it does not appear to have abused its discretion in the methods that it took to assist him. *Brown*, 212 F.3d at 1209 n.4. Specifically, although Scott requested to see photographs of every African American female working in the bridge holding cell on May 15, he provided specific details describing Officer Jane Doe, including her height

and weight, which allowed Commander Prats, Lieutenant Gayle, and Miami Dade County to narrow it down to two officers that generally fit Scott's description. Consequently, showing Scott photographs of the 54 officers that did not fit the general description would have been superfluous and, therefore, unnecessary. Thus, the district court's three photo arrays, which contained photographs of the two officers fitting Scott's description, appear to be adequate to assist him in identifying Officer Jane Doe, even though he was ultimately unable to do so. Accordingly, the district court did not abuse its discretion in dismissing her as a defendant.

## VII.

Municipalities and other local government entities are "persons" within the scope of § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, "a municipality cannot be held liable *solely* because it employs a tortfeasor . . . or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Rather, "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Consequently, "only municipal officers or groups who have final policy-making authority may subject the municipality to § 1983 liability." *Campbell v. Rainbow City*, 434 F.3d 1306, 1312 (11th Cir. 2006).

Here, the district court did not abuse its discretion in dismissing Miami-Dade County as a defendant. In his complaint, Scott acknowledged that Miami Dade County had protocols in place to ensure the safety of prisoners, which he alleged that the Defendants failed to follow, and, therefore, he did not show that Miami Dade County "had a custom or policy that constituted deliberate indifference to" his constitutional rights. Additionally, he did not allege sufficient facts to show that the Defendants, who were employed by the MDDOC, had any "final policymaking authority" with respect to Miami Dade County. *See Campbell*, 434 F.3d at 1312.

## VIII.

"[W]e review a district court's decision about whether to award costs to the prevailing party for abuse of discretion." *Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007). "An abuse of discretion occurs if the trial judge bases an award or denial upon findings of fact that are clearly erroneous." *Id.*

Federal Rule of Civil Procedure 54(d)(1) provides that, "[u]nless a federal statute, the[] [Federal] [R]ules [of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party," and "[t]he clerk may tax costs on 14 days' notice." Fed. R. Civ. P. 54(d)(1). Rule 54(d)(1) "establishes a presumption that costs are to be awarded to a prevailing party, but vests the district court with discretion to decide otherwise." *Chapman v. AI Transp.*, 229 F.3d 1012, 1038 (11th Cir. 2000). "To defeat the presumption and deny full

costs, a district court must have and state a sound basis for doing so." *Id.* at 1039. "[A] non-prevailing party's financial status is a factor that a district court may, but need not, consider in its award of costs pursuant to Rule 54(d)." *Id.* "If a district court in determining the amount of costs to award chooses to consider the non-prevailing party's financial status, it should require substantial documentation of a true inability to pay." *Id.*

Additionally, the Southern District of Florida's Local Rules provide that a party who seeks taxable costs must file a bill of costs "within thirty (30) days of entry of final judgment or other appealable order that gives rise to a right to tax costs." S.D. Fla. L. R. 7.3(c). Notably, a timely motion for a new trial "suspends the finality of a judgment adverse to the movant for the purpose of an appeal until a ruling is made upon the motion." *Phinney v. Houston Oil Field Material Co.*, 252 F.2d 357, 359 (5th Cir. 1958).

Here, the district court did not abuse its discretion in granting the Defendants' motion for costs. Scott argues that the Defendants violated Rule 54(d)(2)(B)(i) because they did not file their motion within 14 days of the jury's verdict. However, that provision governs claims for attorney's fees and related nontaxable expenses, while the Defendants' motion sought payment for "all taxable costs" under Rule 54(d)(1), which does not require a timely motion by the prevailing party. *Compare* Fed. R. Civ. P. 54(d)(1) *with* Fed. R.Civ.P. 54(d)(2). In other words, Scott's timing argument is irrelevant because Defendants sought only payment of taxable costs. Moreover, Scott's timely motion for a new trial suspended the final

judgment until the district court ruled on such motion, and the Defendants timely filed their motion and bill of costs nine days after the district court denied Scott's motion for a new trial. *Phinney*, 252 F.2d at 359; S.D. Fla. L. R. 7.3(c).

Additionally, the Defendants were the prevailing party, and there is a presumption that they were entitled to an award of costs. *See Chapman*, 229 F.3d at 1038. Although Scott argues that the district court failed to explain its justification for imposing costs against him, it was only required to explain its justification if it was overcoming that presumption and denying the Defendants' motion for costs. But the district court did not overcome the presumption; rather, it applied the presumption and granted the Defendants' motion for costs. *See id*. at 1039.

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**